**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA**

LIGTEL COMMUNICATIONS, INC.,

                    Plaintiff,

       v.

BAICELLS TECHNOLOGIES INC.;
BAICELLS TECHNOLOGIES NORTH AMERICA
INC.,

                    Defendants.

Case No. 1:20-cv-00037

**MEMORANDUM OF LAW IN SUPPORT OF MOTION
FOR PRELIMINARY INJUNCTION**

**TABLE OF CONTENTS**

INTRODUCTION .........................................................................................................................1

BACKGROUND .........................................................................................................................2

I.      HNI Codes Identify Each Mobile Telephone User's Network ............................................2

II.     LigTel Deploys A Cutting-Edge Network Featuring A Huawei LTE Core .......................3

III.    BaiCells, Founded By And Employing Former Huawei Personnel, Is Caught
           Using LigTel's HNI Code...................................................................................................4

IV.    BaiCells Refuses To Stop Using LigTel's HNI Code Or To Resolve The Issue,
           And Instead Threatens To Gain Access To LigTel's Core To Reprogram It ......................5

STANDARD OF REVIEW ...........................................................................................................7

ARGUMENT .............................................................................................................................8

I.      Absent a Preliminary Injunction, LigTel Will Suffer Irreparable Harm for Which
           It Has No Adequate Legal Remedy ....................................................................................8

II.     LigTel Is Likely to Succeed on the Merits in Showing That BaiCells Has
           Unlawfully Used LigTel's HNI Code and Misappropriated LigTel's Trade Secrets ........10

           A.     BaiCells's Use of LigTel's HNI Code Violates the Federal Lanham Act
                     And Indiana Unfair Competition Law .................................................................10

           B.     BaiCells Has Misappropriated LigTel's Trade Secrets, In Violation Of
                     Both Federal Law And Indiana State Law ...........................................................12

III.    The Balance of Equities And Public Interest Favor A Preliminary Injunction ................13

CONCLUSION..........................................................................................................................14

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*B. Sanfield, Inc. v. Finlay Fine Jewelry Corp.*,
  168 F.3d 967 (7th Cir. 1999) ........................................................................11, 12

*Dastar Corp. v. Twentieth Century Fox Film Corp.*,
  539 U.S. 23 (2003)...........................................................................................10

*Data Research & Handling, Inc. v. Vongphachanh*,
  278 F. Supp. 3d 1066, 1078 (N.D. Ind. 2017) .................................................11

*Dwyer Instruments, Inc. v. Sensocon, Inc.*,
  873 F. Supp. 2d 1015 (N.D. Ind. 2012) ...........................................................12

*Genesys Telecommunications Labs., Inc. v. Morales*,
  2019 WL 5722225 (S.D. Ind. Nov. 5, 2019) ....................................................13

*Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S. of Am., Inc.*,
  549 F.3d 1079 (7th Cir. 2008) ...........................................................................8

*HCA Franchise Corp. v. Alisch*,
  2016 WL 10706285 (N.D. Ind. Aug. 12, 2016)...................................................8

*Heartland Recreational Vehicles, LLC v. Forest River, Inc.*,
  2009 WL 418079 (N.D. Ind. Feb. 18, 2009).....................................................10

*In the Matter of Requests for Waiver of Various Petitioners to Allow the
  Establishment of 700 Mhz Interoperable Pub. Safety Wireless Broadband
  Networks*,
  27 F.C.C. Rcd. 183 (2012)..................................................................................2

*Integrity Trade Servs., Inc. v. Integrity Employment Partners, LLC*,
  2015 WL 10934322 (N.D. Ind. May 20, 2015) ...................................................8

*Kraft Foods Grp. Brands LLC v. Cracker Barrel Old Country Store, Inc.*,
  735 F.3d 735 (7th Cir. 2013) ..............................................................................8

*Lincoln Chem. Corp. v. DuBois Chemicals, Inc.*,
  2012 WL 6553098 (N.D. Ind. Dec. 13, 2012) ....................................................9

*Promatek Indus., Inc. v. Equitrac Corp.*,
  300 F.3d 808 (7th Cir. 2002) .........................................................................8, 14

*Ram Prod. Co. v. Chauncey*,
  967 F. Supp. 1071 (N.D. Ind. 1997) ...................................................................9

*Ty, Inc. v. Jones Group, Inc.*,
      237 F.3d 891 (7th Cir. 2001) .................................................................9

*United States v. Oliva*,
      705 F.3d 390 (9th Cir. 2012) ................................................................3

*Valencia v. City of Springfield*,
      883 F.3d 959 (7th Cir. 2018) ....................................................8, 10, 13

*VitalGo, Inc. v. Kreg Therapeutics, Inc.*,
      370 F. Supp. 3d 873, 889 (N.D. Ill. 2019) ...........................................10

*Williams Elecs., Inc. v. Bally Mfg. Corp.*,
      568 F. Supp. 1274 (N.D. Ill. 1983) ......................................................11

STATUTES AND RULES

15 U.S.C. § 1125(a)(1)(A) ...........................................................................10

18 U.S.C. § 1836(b)(1) ................................................................................12

18 U.S.C. § 1839(3) .....................................................................................12

Fed. R. Civ. P. 65........................................................................................1

Ind. Code Ann. § 24-2-3-2 ..........................................................................12

Ind. Code Ann. § 24-2-3-3 ..........................................................................13

N.D. Ind. Local Rule 65-1 ...........................................................................1


OTHER AUTHORITIES

IMSI Assignment and Management Guidelines and Procedures (Aug. 2018),
      https://www.atis.org/01_committ_forums/ioc/docs/IMSI-Guidelines-
      v15.1.1.pdf ...................................................................................2, 3, 7

ATIS website, https://www.atis.org/01_about/ (last visited Jan. 10, 2020) ...................................2

*FAQ: eNodeB*, BaiCells Techologies,
      https://baicells.zendesk.com/hc/en-us/articles/228076248-eNodeB
      (last visited January 5, 2020) ...............................................................5

**INTRODUCTION**

Plaintiff LigTel Communications, Inc. seeks immediate injunctive relief, under Federal Rule of Civil Procedure 65(a) and Local Rule 65-1, to stop Defendants BaiCells Technologies, Inc. and BaiCells Technologies North America, Inc. (together, "BaiCells") from continuing to knowingly use LigTel's Home Network Identity (HNI) code—a unique six digit number that identifies the specific company that provides wireless service to a network subscriber—without LigTel's permission.  LigTel also seeks to immediately stop BaiCells's misappropriation and threatened misappropriation of LigTel's valuable and confidential trade secrets, including its encryption code, and the network design and engineering of LigTel's advanced communications network.

Absent this Court's intervention, LigTel—a local family-owned business founded 124 years ago—is suffering and will continue to suffer irreparable harm.  BaiCells's actions cause other service providers to wrongly believe that LigTel is improperly interfering with their networks and failing to follow international and industry-imposed telecommunications rules, which harms LigTel's standing, reputation, and goodwill in the industry.  Indeed, a provider in Colorado has already accused LigTel of interfering with its network based on a signal from BaiCells equipment in Nebraska, where LigTel does not operate.  BaiCells's actions also cause immeasurable damage to the security and integrity of LigTel's network.  And its actions create a serious and substantial risk that law enforcement may be unable to obtain critical information because law enforcement will be misled into believing that a suspect is a LigTel subscriber when that is not so.  In addition, BaiCells's actions may cause LigTel's customers to question LigTel's ability to maintain and control its own network and secure their personal information and private communications.

LigTel will likely succeed on the merits of its unfair competition and trade-secret misappropriation claims, and suffer irreparable harm for which it has no adequate legal remedy

absent an injunction.  The balance of equities and the public interest also support an injunction.
The Court should therefore immediately enjoin BaiCells's improper activity.

## BACKGROUND

### I.    HNI Codes Identify Each Mobile Telephone User's Network

Every mobile telephone in the United States has a unique fifteen-digit number, called an
International Mobile Subscriber Identity ("IMSI").  IMSI Assignment and Management
Guidelines and Procedures §§ 3.5, 3.8 (Aug. 2018), https://www.atis.org/01_committ
_forums/ioc/docs/IMSI-Guidelines-v15.1.1.pdf.  The first six digits of an IMSI—known as the
Home Network Identity ("HNI") code or the Public Land Mobile Network ("PLMN") number—
identify the carrier to which that wireless customer subscribes and the remaining nine digits
identify the particular phone.  *Id.* § 3.9; *see also In the Matter of Requests for Waiver of Various
Petitioners to Allow the Establishment of 700 Mhz Interoperable Pub. Safety Wireless Broadband
Networks*, 27 F.C.C. Rcd. 183, 183–84, ¶ 3 (2012).  HNI codes are assigned by the IMSI Oversight
Council, an open industry committee of the Alliance for Telecommunications Industry Solutions
(ATIS), which is in turn an organization that develops technical and operational standards and
solutions for the telecommunications industry.  *See* IMSI Assignment and Management Guidelines
and Procedures § 1.3; ATIS website, https://www.atis.org/01_about/ (last visited Jan. 10, 2020).
The IMSI Oversight Council charges fees to providers to obtain and maintain an HNI code.

HNI codes serve many functions.  Most importantly, they identify the network to which a
subscriber belongs.  Wentworth Decl. ¶ 5.  That allows other providers to identify the source of an
interfering signal, to manage customers roaming on another provider's network and to determine
what (if any) roaming charges are required.  Wentworth Decl. ¶ 5.  HNI codes also allow law
enforcement officials to identify a suspect or target's cellular service provider, so law enforcement
knows which company to serve with legally authorized process for a search, seizure, or

surveillance when necessary.  Wentworth Decl. ¶ 6; *see, e.g.*, *United States v. Oliva*, 705 F.3d 390, 400-01 (9th Cir. 2012).

The International Telecommunication Union, an agency of the United Nations, prohibits transmissions with false or misleading identification—including using another carrier's HNI code without written documented approval.  In addition, guidelines issued by the IMSI Oversight Council require HNI owners to assign, efficiently manage, and maintain up-to-date and accurate assignment records relating to their mobile terminals and users.  IMSI Assignment and Management Guidelines and Procedures §§ 7.3.1, 7.3.2.

## II.      LigTel Deploys A Cutting-Edge Network Featuring A Huawei LTE Core

LigTel, founded as the Ligonier Telephone Company in 1896, is a family-owned company that proudly provides broadband internet, television, and wireless telephone service in seven counties in northeastern Indiana.  Wentworth Decl. ¶ 1.  As part of its commitment to investing in cutting-edge infrastructure for its wireless service customers, in 2012 LigTel upgraded to an LTE network.  Wentworth Decl. ¶ 2.  At that time, LigTel was the first and only company in North America to deploy a LTE core manufactured by Huawei, a global provider of telecommunications equipment, to establish its network.  Wentworth Decl. ¶ 3.

LigTel's LTE core is critical to the company's operations.  It is the brain of the network, controlling and coordinating user connections and ensuring high-speed connectivity for the entire mobile network.  Wentworth Decl. ¶ 4.  Among many functions, the core authenticates network subscribers using IMSI numbers and HNI codes.  Wentworth Decl. ¶ 4.  Communications between the core and network subscribers are encrypted to prevent someone other than the sender and intended recipient of the communication from seeing the content.  Wentworth Decl. ¶ 8. Encryption also helps maintain the network's integrity, including by preventing non-subscribers from spoofing a connection to masquerade as a customer.  *See* Wentworth Decl. ¶ 8.

3

LigTel worked closely with Huawei employees to design, build, configure, and maintain its groundbreaking LTE network.  Wentworth Decl. ¶ 7.  To facilitate that cooperation, the companies entered into a non-disclosure agreement so that LigTel could safely share with Huawei proprietary and sensitive trade secrets related to LigTel's network.  Wentworth Decl. ¶ 7.  In particular, LigTel shared its radio frequency configurations, IP infrastructure (both physical and logical), its network engineering and architecture, the technologies LigTel employed to connect its networks, and LigTel's encryption code for ensuring that communications between the core and LigTel's subscribers remained confidential.  Wentworth Decl. ¶ 8.

## III.  BaiCells, Founded By And Employing Former Huawei Personnel, Is Caught Using LigTel's HNI Code

Scott Xingang Liang and Yingzhe Ding were employed at Huawei when LigTel's LTE core was being designed and deployed.  *See* Compl. ¶ 27.  In 2014, they created BaiCells, an equipment vendor that offers LTE service equipment and LTE core solutions to providers that are in the same business as LigTel.  *See* Compl. ¶ 29.  Ronald Mao, a technical advisor at BaiCells, also previously worked at Huawei and worked directly with LigTel on technical aspects of projects related to LigTel's LTE core.  Wentworth Decl. ¶ 9.  Mao had access to LigTel's confidential trade secrets, including LigTel's encryption code (which masks the content of traffic between LigTel's core and subscribers), and LigTel's network architecture (which is the proprietary operational layout of LigTel's equipment, core, and servers).  Wentworth Decl. ¶ 9.

BaiCells and LigTel have never done business together.  Wentworth Decl. ¶ 10; Mead Decl. ¶ 2.  Before June 2019, the two companies had never had any contact with each other or otherwise had any dealings whatsoever.  Wentworth Decl. ¶ 10; Mead Decl. ¶ 2.  In June 2019, LigTel was contacted by a wireless service provider in northeast Colorado, which reported that it had discovered interference caused by a wireless signal generated by LigTel originating in

4

Nebraska.  Wentworth Decl. ¶ 11.  The Colorado provider identified the signal causing the interference as LigTel's because LigTel's HNI code was associated with the signal.  *See* Wentworth Decl. ¶ 11.

An investigation revealed that the interference was coming from a provider in Nebraska that was using equipment from BaiCells that was engineered to use a single HNI code provided by BaiCells to all its customers.  Wentworth Decl. ¶ 12.  LigTel investigated further and discovered that BaiCells had been instructing purchasers to configure its equipment using a five-digit HNI code 31198, which BaiCells' equipment and providers interpreted as the six-digit code 311980— LigTel's HNI code.  Wentworth Decl. ¶ 12.  BaiCells's public website and other communications directed to industry, customers, and potential customers—including online updates, technical documents, and other materials—contained instructions for effectively using LigTel's HNI code.[1] Wentworth Decl. ¶ 12.  At that time, LigTel had not authorized the Nebraska provider or BaiCells to use LigTel's HNI code.  Wentworth Decl. ¶ 12.

As part of a reasonable investigation to determine the scope and potential impacts of BaiCells's use of LigTel's HNI code, LigTel then contacted an Indiana company that serves more than a dozen Indiana communities and has purchased hosted core services from BaiCells.  Mead Decl. ¶ 4.  The Indiana provider confirmed that BaiCells had directed it to use LigTel's HNI code and reported that it did not know BaiCells lacked authorization to use that code.  Mead Decl. ¶ 4.

## IV.   BaiCells Refuses To Stop Using LigTel's HNI Code Or To Resolve The Issue, And Instead Threatens To Gain Access To LigTel's Core To Reprogram It

Shortly after LigTel discovered that BaiCells had been using LigTel's HNI code without permission, LigTel and BaiCells met at LigTel's offices in Ligonier.  Mead Decl. ¶ 6.  On the

---

[1] *See, e.g.*, *FAQ: eNodeB*, BaiCells Techologies, https://baicells.zendesk.com/hc/en-us/articles/228076248-eNodeB (last visited January 5, 2020) ("Q: What is the proper way to set the mobile carrier code (PLMN) on the eNB?  A: All operators using the Baicells CloudCore OMC share the same public land mobile network (PLMN) number: 31198").

BaiCells side, the meeting was attended by Rick Harnish, BaiCells Director of WISP Markets in North America; Bo Wei, North American President of BaiCells; and Ronald Mao, the BaiCells technical advisor who worked on LigTel's core when he was formerly employed at Huawei.  Mead Decl. ¶ 6.  LigTel representatives included Randy Mead, LigTel's CEO and General Manager, Josh Wentworth, LigTel's Network Operations Supervisor, and counsel for LigTel.  Mead Decl. ¶ 6.

At the meeting, LigTel made two offers.  First, LigTel requested that BaiCells stop using LigTel's HNI code and migrate all its customers to BaiCells's own HNI code.  Mead Decl. ¶ 8. BaiCells appeared unwilling to do so—even contending that it was logistically impossible to change HNI codes.  Mead Decl. ¶ 8.  Second, because BaiCells operates with tens of thousands of customers nationwide (as opposed to LigTel's 1,500 wireless service customers in Indiana), LigTel offered to obtain a new HNI code, switch its customers to the second HNI code, and transfer the original HNI code to BaiCells, in exchange for a reasonable fee that would cover LigTel's costs and compensate LigTel for the inconvenience.  Mead Decl. ¶ 10.  BaiCells again refused.  Mead Decl. ¶ 10.[2]

At an impasse, Wei requested a private side-bar meeting with Mead.  Mead Decl. ¶ 12. Wei reported that he knew that LigTel's core was manufactured by Huawei, though Mead had never shared that information with Wei or the other BaiCells employees, and asked if Mead knew that Mao formerly worked at Huawei.  Mead Decl. ¶ 13.  Wei then proposed that he could have Mao "get into" LigTel's core and reprogram it for free, without informing Huawei.  Mead Decl.

---

[2] For its part, BaiCells proposed to acquire LigTel's HNI code and to grant LigTel a right to use that number and alternatively proposed to implement software that would continue to use LigTel's HNI code.  Both of BaiCells's offers, however, would not have alleviated the harm to LigTel or avoided future risk and confusion because subscribers to LigTel's network and any network using BaiCells equipment would continue to be identified by the same HNI code.  Mead Decl. ¶ 11.

¶ 13.   Mead interpreted Wei's offer as implying that Mao could do the work on LigTel's core without LigTel providing him with proprietary trade secret information—such as the network design or encryption code.   Mead Decl. ¶ 14.   In other words, Mead viewed the offer as a threat that Mao would attempt to gain access to LigTel's core without LigTel's permission.   Mead Decl. ¶ 14.   Wei also offered to sell BaiCells equipment to LigTel at a deep discount.   Mead Decl. ¶ 15. Mead then ended the side-bar meeting and the parties eventually agreed to adjourn discussions. Mead Decl. ¶ 15.

Since the unsuccessful attempt to resolve the matter, BaiCells has not agreed to return LigTel's trade secrets, to not use those secrets, or to not threaten to use those secrets.   Mead Decl. ¶ 16.   And although BaiCells now has its own HNI code, it has not actually migrated its customers to that code or stopped using LigTel's code.   Mead Decl. ¶ 17.   To the contrary, BaiCells has continued to publish LigTel's HNI code on BaiCells's website and continued to instruct new customers to use LigTel's HNI code.   Mead Decl. ¶ 17.   Thus, the number of BaiCells customers using LigTel's HNI code without authorization continues to increase.   Mead Decl. ¶ 17.   LigTel has no good faith reason to believe that BaiCells's will ever stop using LigTel's HNI code or stop possessing or using LigTel's trade secrets.   Mead Decl. ¶ 21; Wentworth Decl. ¶ 22.[3]

### STANDARD OF REVIEW

LigTel is entitled to a preliminary injunction because it (1) will suffer irreparable harm absent an injunction, (2) has no adequate remedy at law, and (3) is likely to succeed on the merits— meaning that the movant has shown its "chances to succeed on his claims are 'better than

---

[3] LigTel has also attempted to resolve the HNI-code issue through ATIS, which offers parties a way to attempt to voluntarily resolve disputes related to HNI codes without interfering with the parties' right to pursue relief elsewhere. *See* IMSI Assignment and Management Guidelines and Procedures § 12.0; *see also id.* § B-4.3 ("The existence of the IOC, including its policies and procedures, does not interfere with the right of any telecommunications entity to refer or appeal matters to regulators or appropriate government agencies.").   But LigTel has brought this action because that process has proved slow and ineffective and cannot fully protect LigTel's rights or prevent it from suffering irreparable harm.  *See* Mead Decl. ¶ 18.

negligible.'"  *Valencia v. City of Springfield*, 883 F.3d 959, 965-66 (7th Cir. 2018) (citation

omitted).  In addition, the irreparable harm LigTel would suffer without a preliminary injunction

exceeds any irreparable harm BaiCells would suffer if its improper conduct were enjoined, and the

public interest favors issuing an injunction.  *See id.*  Applying this Court's sliding-scale approach,

because the balance of harm favors LigTel, LigTel's burden to show likelihood of success—which

in any event "is a low threshold" that does not require LigTel to "demonstrate a likelihood of

absolute success on the merits"—becomes even lighter.  *Id.*

## ARGUMENT

## I.  Absent a Preliminary Injunction, LigTel Will Suffer Irreparable Harm for Which It Has No Adequate Legal Remedy

Under controlling precedent, LigTel will suffer irreparable harm absent an injunction.

According to the Seventh Circuit, "it is well settled that injuries arising from Lanham Act

violations," such as those LigTel is suffering and has suffered, "are presumed to be irreparable."

*Promatek Indus., Inc. v. Equitrac Corp.*, 300 F.3d 808, 813 (7th Cir. 2002); *see Kraft Foods Grp.*

*Brands LLC v. Cracker Barrel Old Country Store, Inc.*, 735 F.3d 735, 741 (7th Cir. 2013).  "Loss

of trade secrets," too, "constitute[s] irreparable harm for which no adequate remedy at law exists."

*HCA Franchise Corp. v. Alisch*, 2016 WL 10706285, at *5 (N.D. Ind. Aug. 12, 2016).  Many

courts have also held that harm to a company's reputation or lost goodwill is similarly irreparable.

*See, e.g.*, *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S. of Am., Inc.*, 549 F.3d 1079,

1089 (7th Cir. 2008) (collecting cases); *Integrity Trade Servs., Inc. v. Integrity Employment*

*Partners, LLC*, 2015 WL 10934322, at *2 (N.D. Ind. May 20, 2015).

LigTel has no adequate legal remedy for these irreparable injuries because they cannot be

quantified as damages.  *See Ram Prod. Co. v. Chauncey*, 967 F. Supp. 1071, 1085 (N.D. Ind. 1997)

("[L]oss of customer goodwill often amounts to irreparable injury because the damages flowing

from such losses are difficult to compute."); *Lincoln Chem. Corp. v. DuBois Chemicals, Inc.*, 2012 WL 6553098, at *7 (N.D. Ind. Dec. 13, 2012) (explaining that damages could not "be reasonably calculated for any misuse of trade secrets"). Indeed, "it is virtually impossible to ascertain the precise economic consequences of intangible harms, such as damage to reputation and loss of goodwill." *Ty, Inc. v. Jones Group, Inc.*, 237 F.3d 891, 902 (7th Cir. 2001).

Moreover, BaiCells's continuing misconduct is harming LigTel's business reputation and goodwill in many different ways. By using LigTel's HNI code, BaiCells is effectively disguising the networks of *all* of BaiCells's customers to appear as LigTel's network. In doing so, BaiCells causes other providers to blame LigTel for any interference, makes it appear that LigTel does not comply with international and industry-imposed rules, and creates an impression that LigTel cannot properly manage its network. Wentworth Decl. ¶ 19. That tarnishes LigTel's reputation in the industry, leading other providers to treat LigTel less favorably which may ultimately frustrate LigTel's ability to serve its customers. Wentworth Decl. ¶ 19. Moreover, BaiCells's use of LigTel's HNI code may cause law enforcement to seek information from LigTel about individuals who appear to be LigTel subscribers, when in fact they are not. *See* Wentworth Decl. ¶ 6; Mead Decl. ¶ 20. That not only harms LigTel's reputation with law enforcement, but also creates serious public safety risks. *See* Mead Decl. ¶ 20. In addition, the unauthorized use of LigTel's HNI code and theft of its trade secrets may also threaten LigTel's reputation with customers, as they could interpret BaiCells's actions as showing that LigTel cannot control or maintain its network or protect customers' personal information and confidential communications. Wentworth Decl. ¶ 20.

LigTel therefore can satisfy its burden to show that it will suffer irreparable harm absent an injunction and has no adequate remedy at law.

**II.     LigTel Is Likely to Succeed on the Merits in Showing That BaiCells Has Unlawfully Used LigTel's HNI Code and Misappropriated LigTel's Trade Secrets**

In addition to showing that it will suffer irreparable harm absent an injunction, LigTel is likely to meet the "low threshold" to show that BaiCells has violated the federal Lanham Act, Indiana unfair competition law, federal trade secrets law, and the Indiana Uniform Trade Secrets Act.  *See Valencia*, 883 F.3d at 965-66.

**A.     BaiCells's Use of LigTel's HNI Code Violates the Federal Lanham Act And Indiana Unfair Competition Law**

The Lanham Act—the federal law prohibiting unfair competition—bars the use in commerce of any "false designation of origin" or a "false or misleading representation of fact" which is likely to cause confusion or deception.  15 U.S.C. § 1125(a)(1)(A).  BaiCells is flagrantly violating both prohibitions.

*First*, BaiCells's use of LigTel's HNI code is a false designation of origin on goods or services in interstate commerce that is likely to cause confusion.  *See VitalGo, Inc. v. Kreg Therapeutics, Inc.*, 370 F. Supp. 3d 873, 889 (N.D. Ill. 2019) (describing elements of Lanham Act false designation of origin claim).  A false designation of origin claim includes palming off, where the defendant offers its own goods or services under the plaintiff's name.  *Id.*; *Heartland Recreational Vehicles, LLC v. Forest River, Inc.*, 2009 WL 418079, at *4 (N.D. Ind. Feb. 18, 2009); *see generally Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 27-30 & n.1 (2003) (describing palming off claims).

Palming off is exactly what BaiCells is doing here.  By directing providers across the country to use LigTel's HNI code in BaiCells's equipment, BaiCells is effectively broadcasting that LigTel is the wireless carrier for all networks using BaiCells's equipment.  *See* Wentworth Decl. ¶¶ 5, 19.  But that is demonstrably false.  And there is no doubt that the use of LigTel's HNI code with BaiCells's equipment is likely to cause confusion.  Indeed, it already has—a Colorado

10

provider already wrongly believed LigTel was interfering with its network based on a signal bearing LigTel's HNI code that was transmitted from BaiCells equipment in Nebraska, where LigTel has no operations whatsoever.  *See* Wentworth Decl. ¶ 11.  Such confusion is likely to occur again so long as BaiCells continues palming off LigTel's HNI code in violation of the Lanham Act.

*Second*, BaiCells's use of LigTel's HNI code is a false or misleading statement that is likely to deceive a substantial segment of the statement's audience in a material way that harms LigTel. *See B. Sanfield, Inc. v. Finlay Fine Jewelry Corp.*, 168 F.3d 967, 971 (7th Cir. 1999) (describing elements of a Lanham Act misrepresentation claim).  Courts take a broad view of what qualifies as a false or misleading statement for purposes of the Lanham Act.  *See Data Research & Handling, Inc. v. Vongphachanh*, 278 F. Supp. 3d 1066, 1078 (N.D. Ind. 2017) (allowing claim based on allegedly false statements disseminated on websites directed at industry professionals and potential customers); *Williams Elecs., Inc. v. Bally Mfg. Corp.*, 568 F. Supp. 1274, 1282 n.24 (N.D. Ill. 1983) (applying Lanham Act to allegedly misleading statement disseminated to potential distributors "who would use it to influence purchasing decisions" of customers).

Here, BaiCells's false and misleading statements to the public regarding its HNI code are actionable as violations of the Lanham Act.  By publishing HNI code 31198 on its public website, in communications to actual and potential customers, and to service providers using BaiCells equipment, BaiCells implicitly represents to service providers that it has authorization to use that code.  *See* Wentworth Decl. ¶ 5.  But that is false and misleading.  BaiCells knows that its communications will cause providers to use HNI code 311980, which is *LigTel's* HNI code, and

that neither BaiCells nor the providers are authorized to use LigTel's code.  *See* Wentworth Decl.

¶ 12.  BaiCells's actions therefore constitute misrepresentations that violate the Lanham Act.[4]

In addition to violating the federal Lanham Act, BaiCells's misconduct violates Indiana's

common law prohibition on unfair competition.  An unfair competition claim under Indiana law

tracks the elements of a Lanham Act claim.  *See Dwyer Instruments, Inc. v. Sensocon, Inc.*, 873 F.

Supp. 2d 1015, 1040 (N.D. Ind. 2012).  Thus, for the same reasons discussed above, BaiCells's

unauthorized use of LigTel's HNI code also violates Indiana's common-law tort of unfair

competition.

### B.     BaiCells Has Misappropriated LigTel's Trade Secrets, In Violation Of Both Federal Law And Indiana State Law

BaiCells has likewise violated federal and Indiana law that protects LigTel's trade

secrets—including LigTel's encryption code and network architecture—which are confidential

and valuable, and which LigTel has taken reasonable measures to protect.  *See* 18 U.S.C. § 1839(3)

(defining "trade secret" under federal law); Ind. Code Ann. § 24-2-3-2 (similarly defining "trade

secret" under Indiana law).

Federal law prohibits unauthorized acquisition or use of a trade secret that is related to a

product or service used in interstate commerce.  18 U.S.C. § 1836(b)(1); *id.* § 1839(5) (defining

"misappropriation").  Yet BaiCells has misappropriated LigTel's encryption code and network

architecture—which are used in interstate commerce and which LigTel only gave to Huawei under

a non-disclosure agreement—in both ways that federal law prohibits.  First, BaiCells made clear

that it has acquired LigTel's encryption code and key details about its core and network when

---

[4] Although LigTel need not show that BaiCells's literally false statements actually deceived or is likely to deceive customers, *B. Sanfield*, 168 F.3d at 971, LigTel could make that showing, as BaiCells's use of LigTel's HNI code has already deceived at least one service provider in Colorado and another in Indiana.  *See* Wentworth Decl. ¶¶ 11-12; Mead Decl. ¶ 4.

BaiCells's Bo Wei mentioned that Ronald Mao, a BaiCells technical advisor, had previously worked at Huawei and offered to have him "get into" LigTel's LTE core and reprogram it without involving Huawei (Mead Decl. ¶ 13).   Second, BaiCells's use of LigTel's HNI code, despite having no other connection to LigTel and over 400 other HNI codes to choose from (including its own), shows that BaiCells has illicitly acquired LigTel's network architecture.   BaiCells's actions therefore violate federal trade secrets law.

BaiCells has also independently violated Indiana trade secrets law.   Indiana law mirrors federal law in prohibiting the acquisition or use of trade secrets, so BaiCells has violated state law for the same reasons just discussed.  *See, e.g.*, *Genesys Telecommunications Labs., Inc. v. Morales*, 2019 WL 5722225, at *12-13 (S.D. Ind. Nov. 5, 2019).   But Indiana trade secrets law goes farther than federal law by prohibiting "threatened misappropriation."   Ind. Code Ann. § 24-2-3-3.   So BaiCells violated Indiana law by acquiring and using LigTel's trade secrets and also by *threatening* to use those trade secrets when Wei suggested that Ronald Mao could get into LigTel's core to reprogram it without Huawei's or LigTel's permission.

At bottom, regardless of the federal or state-law theory, LigTel is likely to succeed on the merits of its misappropriation of trade secrets claims.

## III.   The Balance of Equities And Public Interest Favor A Preliminary Injunction

Having shown its entitlement to a preliminary injunction, LigTel can also show that the balance of equities favors an injunction and that issuing one is in the public interest.  *See Valencia*, 883 F.3d at 965-66.

As for balancing, LigTel demonstrated above that it is suffering and will continue to will suffer irreparable harm to its business reputation and goodwill, and face risks to network security without a preliminary injunction.  *See supra* 8-9.   BaiCells, on the other hand, will suffer no such harm if its improper conduct is enjoined.   BaiCells now has its own HNI code, so it can reprogram

its equipment and migrate customer networks to use that code without interrupting its business. The one-time, calculable costs of doing so are not only the direct result of BaiCells's violation of LigTel's rights, but also starkly contrast with the irreparable harm to which BaiCells has subjected LigTel.

An injunction barring BaiCells from continuing to use LigTel's HNI code and misappropriating LigTel's trade secrets is also in the public interest. Such an injunction would clear up existing confusion in the marketplace and prevent future confusion. *See Promatek Indus.*, 300 F.3d at 813–14. It would also ensure that any network interference caused by BaiCells equipment (which currently would incorrectly appear to be caused by LigTel) could be promptly resolved—benefitting both market participants and customers who would be impacted by the interference. Finally, an injunction mitigates serious risks to public safety caused by network interference, by law enforcement's confusion about which carrier holds relevant information about particular suspects and investigation targets, and by any potential intrusion into LigTel's network as a result of misappropriation of LigTel's trade secrets.

In contrast, there is no countervailing public interest that supports allowing BaiCells to continue to use LigTel's HNI code and to misappropriate LigTel's trade secrets. So there is no reason to deny an injunction and allow BaiCells to continue engaging in its harmful conduct.

## CONCLUSION

BaiCells's actions will cause irreparable harm to LigTel's reputation and goodwill, as well as continue to endanger network integrity and public safety. In addition, LigTel is likely to prevail on the merits of its federal and state law claims for unfair competition and misappropriation of trade secrets, and the balance of equities and public interest support enjoining BaiCells's continuing use of LigTel's HNI code and BaiCells's misappropriation of LigTel's trade secrets. Therefore, this Court should grant LigTel's motion for a preliminary injunction.

Dated:  January 21, 2020                          Respectfully submitted,

                                                  /s/ *Michael J. Nelson*

                                                  Samuel L. Feder (*pro hac vice* pending)
                                                  Jenner & Block LLP
                                                  1099 New York Avenue, NW, Suite 900
                                                  Washington, DC 20001
                                                  (202) 639-6000

                                                  Michael J. Nelson
                                                  Gabriel K. Gillett (*pro hac vice* pending)
                                                  Leigh J. Jahnig (*pro hac vice* pending)
                                                  Jenner & Block LLP
                                                  353 N. Clark Street
                                                  Chicago, IL 60654
                                                  (312) 222-9350

                                                  *Attorneys for Plaintiff LigTel Communications, Inc.*

15

**CERTIFICATE OF SERVICE**

I hereby certify that on January 21, 2020, I caused the foregoing document to be filed electronically with the Clerk of the Court using the CM/ECF system, and sent a copy of the foregoing document to the following defendants at the following addresses:

    BaiCells Technologies Inc.
    c/o Registered Agent Solutions, Inc.
    9 E. Loockerman Street, Suite 311
    Dover, DE 19901

    BaiCells Technologies North America Inc.
    c/o Registered Agent Solutions, Inc.
    1701 Directors Blvd., Suite 300
    Austin, TX 78744


DATED: January 21, 2020

                                        */s/ Gabriel K. Gillett*