## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA

LIGTEL COMMUNICATIONS, INC.,

                Plaintiff,

       v.

BAICELLS TECHNOLOGIES INC.;
BAICELLS TECHNOLOGIES NORTH AMERICA
INC.,

             Defendants.

Case No. 1:20-cv-00037

**DECLARATION OF**

**RANDY MEAD**

I, Randy Mead, declare the following:

1.     I am CEO and General Manager for LigTel Communications, Inc.

2.     LigTel and BaiCells have never done business together.  Before June 2019, in my experience the two companies had never had any contact with each other or otherwise had any dealings whatsoever.

3.     In June 2019, Josh Wentworth, LigTel's Network Operations Supervisor, informed me that he had learned that a customer of BaiCells, a wireless provider in Nebraska, was using LigTel's HNI code, and that BaiCells had programmed the HNI code into that Nebraska provider's equipment.

4.     As part of my investigation into the scope and impact of issues related to the unauthorized use of LigTel's HNI code, I contacted another wireless services provider in Indiana that has purchased hosted core services from BaiCells, to determine whether the HNI-code issue problem was isolated to the Nebraska provider.  I asked that Indiana provider what HNI code was used by their network.  I spoke to multiple employees at that Indiana provider, and they confirmed that their network used the HNI code 311980.  The Indiana provider reported that it did not know BaiCells lacked authorization to use that code.

5.     LigTel has approximately 1,500 wireless service customers in northeastern Indiana. Based on my knowledge of the market and industry, I believe that approximately 50,000 individuals are served by providers who use BaiCells equipment.  Based on BaiCells's public website, other publications, and my understanding of how BaiCells conducts its business, I believe that all 50,000 are using LigTel's HNI code.

6.     On July 29, 2019, I attended a meeting with BaiCells at LigTel's offices in Ligonier, Indiana.  The meeting was attended by three BaiCells representatives: Rick Harnish, BaiCells

Director of WISP Markets in North America; Bo Wei, North American President of BaiCells; and Ronald Mao, the BaiCells technical advisor who worked on LigTel's core when he was formerly employed at Huawei.  Josh Wentworth and I both attended the meeting, along with counsel for LigTel.

7.     At the meeting BaiCells acknowledged that it was using and directing its customers to use LigTel's HNI code.  BaiCells did not attempt to explain, much less justify, its unauthorized use of LigTel's HNI code, and suggested that it intended to use LigTel's HNI code in perpetuity.

8.     We asked BaiCells to stop using our HNI code and to migrate its customers to BaiCells's own HNI code.  BaiCells appeared unwilling to do so—going so far as to claim that changing HNI codes would be logistically impossible.

9.     Migrating LigTel's customers to a new HNI code would require LigTel to change the SIM card of every single one of its customers.  That would require LigTel employees to go to every LigTel customer location, likely often after hours, and to offer a discount to existing customers to compensate for the inconvenience.  The cost to migrate its customers to a new HNI code would be approximately $400,000, though could be even higher.

10.     Because BaiCells refused to agree to stop using LigTel's HNI code, I offered to transfer the HNI code to BaiCells for a fee that would cover LigTel's costs to migrate customers, other costs LigTel has incurred related to BaiCells's use of LigTel's HNI code, and compensate LigTel for the inconvenience.  BaiCells again refused.

11.     For its proposal, BaiCells offered to acquire LigTel's HNI code and to grant LigTel a right to use that number and alternatively proposed to implement software that would continue to use LigTel's HNI code.  Both of BaiCells's offers, however, would not have alleviated the harm

to LigTel or avoided future risk and confusion because subscribers to LigTel's network and any network using BaiCells equipment would continue to be identified by the same HNI code.

12.     Wei then asked to speak to me alone, to which I agreed.  When we were alone, Wei offered that BaiCells would pay LigTel $100,000 to obtain LigTel's HNI code, and then BaiCells would grant LigTel a secondary use license to use its own HNI code.  I again explained to Wei that LigTel could not agree to a deal in which both companies used the same HNI code, because then the confusion that led to LigTel's discovery of the problem—the risk of ongoing interference because other carriers could not identify the signal—would still remain.

13.     Wei then stated that he knew that Huawei had manufactured and configured LigTel's core, though I had never shared that information with Wei or any other BaiCells employees.  Wei then asked me if I knew that Ronald Mao had formerly worked at Huawei.  I said yes.  Wei then offered to have Mao "get into" our Huawei-manufactured core and reprogram it himself, so Mao could do it for free and we would not have to pay Huawei to do so.

14.     I took Wei's offer as a threat to misappropriate LigTel's trade secrets and as indicating that our network could be at risk.  In other words, I understood Wei's offer to mean that Mao and BaiCells could attempt to access LigTel's network without permission, meaning that BaiCells had access to the confidential and sensitive information (including LigTel's encryption code and network architecture) that Huawei had used to program the core in the first place.

15.     Wei also offered to give LigTel discounts on BaiCells equipment.  I told Wei that I did not feel comfortable discussing such a proposal and went back to join the larger meeting.

16.     Since that meeting, BaiCells has not agreed to return LigTel's trade secrets, to not use those secrets, or to not threaten to use those secrets.

17.     BaiCells has its own HNI code, 314030.  But BaiCells has not actually migrated its customers to that code or stopped using LigTel's code.  Instead, BaiCells has continued to publish LigTel's HNI code on BaiCells's website, and continued to instruct new customers to use LigTel's HNI code.  Thus, the number of BaiCells customers using LigTel's HNI code without authorization continues to increase.

18.     After the meeting with BaiCells, LigTel attempted to resolve the HNI-code issue through ATIS, which offers parties a way to attempt to voluntarily resolve disputes related to HNI codes without interfering with the parties' right to pursue relief elsewhere.  But that process has proved ineffective—among other things, BaiCells has refused to propose an acceptable or credible resolution to the situation, has failed to provide a binding and detailed timeline of when it will cease using LigTel's HNI code, and has intimated that it may take the position that ATIS lacks authority to order relief.  LigTel lacks confidence that the ATIS process will adequately resolve its HNI-code issues (if at all), and LigTel's trade secret-related issues are outside the scope of the ATIS process.

19.     LigTel is unaware of the full scope of BaiCells's use of LigTel's HNI code—LigTel cannot determine how many subscribers in how many jurisdictions appear to be LigTel subscribers based on their HNI code but are not actually LigTel subscribers.

20.     LigTel has received requests from law enforcement for information on LigTel subscribers.  My understanding is that law enforcement is able to identify a suspect or target's cellular service provider based on the HNI code used by the subscriber's equipment.  My understanding is that law enforcement thus uses the HNI code to determine which company to serve with legally authorized process for a search, seizure, or surveillance when necessary.

21.     I do not believe that BaiCells has any good faith intention to stop using LigTel's HNI code or to stop possessing or using LigTel's trade secrets.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 20, 2020

Randy Mead