**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

| | |
|---|---|
| LIGTEL COMMUNICATIONS, INC., | |
| Plaintiff, | **ANSWER** |
| v. | |
| BAICELLS TECHNOLOGIES INC.; BAICELLS TECHNOLOGIES NORTH | Case No. 1:20-cv-00037-HAB-SLC |
| AMERICA INC., | |
| Defendants. | |

<u>**ANSWER OF DEFENDANTS BAICELLS TECHNOLOGIES INC. AND BAICELLS TECHNOLOGIES NORTH AMERICA INC.**</u>

Defendants Baicells Technologies Inc. and Baicells Technologies North America Inc. ("Baicells" or "Defendants"), by counsel, hereby respond to the Complaint as follows:

<u>**NATURE OF THIS ACTION**</u>

1.        In this action, Plaintiff LigTel Communications, Inc., a provider of wireless broadband internet, next-generation data, and wireless telephone services, seeks injunctive relief to stop Defendants BaiCells Technologies, Inc. and BaiCells Technologies North America, Inc. (collectively, "BaiCells") from continuing to knowingly use LigTel's Home Network Identity (HNI) code—a unique six digit number that identifies the specific company providing service to a network subscriber—without LigTel's permission. LigTel also seeks injunctive relief to stop BaiCells from continuing to misappropriate, use, and threaten to use LigTel's valuable, sensitive, and confidential trade secrets—including the encryption code and network design for the LTE core that is the centerpiece of LigTel's advanced communications network.

**ANSWER:**     Baicells denies the allegations contained in Paragraph 1 of the Complaint.

2.      LigTel, founded as the Ligonier Telephone Company in 1896, is a family-owned company that proudly serves approximately 1,500 wireless service customers across seven counties in northeastern Indiana.

> **ANSWER:**     Baicells is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Paragraph 2 of the Complaint.

3.      As part of its commitment to investing in cutting-edge infrastructure for its wireless service customers, in 2012 LigTel upgraded to an LTE network. At that time, LigTel was the first and only company in North America to deploy a LTE core manufactured by Huawei, a global provider of telecommunications equipment, to establish its network. Accordingly, LigTel worked closely with Huawei to design and build the network—including sharing with Huawei LigTel's proprietary and sensitive information about the engineering, architecture, configurations, IP infrastructure, and technology employed in LigTel's network.

> **ANSWER:**     Baicells is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Paragraph 3 of the Complaint.

4.      LigTel's LTE core is critical to the company's operations. It is the brain of the network, controlling and coordinating user connections and ensuring high-speed connectivity for the entire mobile network. Among many functions, the core authenticates network subscribers using the HNI code. Additionally, communications between the core and network subscribers are encrypted to prevent someone other than the sender and intended recipient of the communication

from seeing the content. Encryption also helps maintain the network's integrity, including by preventing non-subscribers from spoofing a connection to masquerade as a customer.

> **ANSWER:**    Baicells is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Paragraph 4 of the Complaint.

5.       In June 2019, LigTel learned that BaiCells had been directing its customers to set up their equipment using a five-digit HNI code, 31198, knowing the equipment and providers would interpret the code as 311980—LigTel's HNI code. In other words, for all intents and purposes BaiCells has been using LigTel's HNI code. As a result, every signal being broadcast using BaiCells equipment—including signals relating to approximately 50,000 subscribers nationwide—is identified as coming from LigTel. That includes signals causing interference with other networks, signals that may present public safety risks, and signals that may be of interest to law enforcement.

> **ANSWER:**    Baicells is without sufficient knowledge or information to form a belief as to the truth or falsity of what LigTel purports to have "learned."  Baicells denies the remaining allegations contained in Paragraph 5 of the Complaint.

6.       Indeed, LigTel first learned that BaiCells was using its HNI code because a wireless service provider in Colorado contacted LigTel to report interference caused by a signal from Nebraska that featured LigTel's HNI code. But LigTel does not have any operations in Nebraska or Colorado. After an investigation, LigTel learned that the interference was being caused by a Nebraska service provider that was using BaiCells equipment and that had been told to use LigTel's HNI code.

**ANSWER:**   Baicells is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Paragraph 6 of the Complaint.

7.      LigTel asked BaiCells to either stop using LigTel's HNI code or to pay to change LigTel's HNI code, which would require reprogramming LigTel's core and its subscribers' equipment to use a different HNI code. BaiCells refused. Instead, BaiCells offered to have one of its employees reprogram LigTel's core—without involving Huawei, the manufacturer, and apparently without needing any access information or encryption codes from LigTel—because that employee previously worked for Huawei. In other words, BaiCells threatened to use LigTel's trade secrets to get into LigTel's core, while offering to sell LigTel new equipment at a deep discount.

**ANSWER:**   Baicells admits that LigTel demanded payment from Baicells.  Baicells denies the remaining allegations contained in Paragraph 7 of the Complaint.

8.      BaiCells's actions have made clear that it was no coincidence that it had opted to improperly use LigTel's HNI code out of the nearly 400 codes available. Rather, BaiCells selected LigTel's HNI code because BaiCells had obtained confidential, sensitive, and proprietary trade secrets that LigTel had provided to Huawei during the design and build of LigTel's core. BaiCells also suggested that it was seeking to profit from its unlawful possession of LigTel's trade secrets by squeezing LigTel into buying new equipment from BaiCells.

**ANSWER:**   Baicells denies the allegations contained in Paragraph 8 of the Complaint.

9.       BaiCells has its own HNI code. But rather than use its own code, BaiCells has brazenly continued to use and direct its customers to use LigTel's HNI code despite being on notice of the harm it causes LigTel.

>   **ANSWER:**   Baicells denies the allegations contained in Paragraph 9 of the Complaint, except Baicells admits that it has a registered HNI code of 314030, to which it has worked quickly and in good faith to transfer its customers.

10.      LigTel seeks immediate injunctive relief to stop BaiCells's flagrantly improper activity, including BaiCells's continuing use of LigTel's HNI code and BaiCells's ongoing misappropriation, possession, and use of LigTel's trade secrets. LigTel seeks an injunction as soon as possible to prevent irreparable harm from damage to LigTel's business reputation and goodwill among both customers and industry peers, from grave risks to LigTel's network security and integrity, and from BaiCells's misappropriation of LigTel's trade secrets.

>   **ANSWER:**   Baicells denies the allegations contained in Paragraph 10 of the Complaint.

11.      Plaintiff LigTel is a provider of broadband internet, television, and wireless telephone service to approximately 1,500 wireless service customers in seven counties in northeastern Indiana. LigTel is incorporated in Indiana and maintains its principal place of business at 414 S. Cavin Street, in Ligonier, Indiana.

>   **ANSWER:**   Baicells is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Paragraph 11 of the Complaint.

12.      Defendants BaiCells Technologies North America Inc. and BaiCells Technologies Inc. (together, "BaiCells") are equipment vendors that provide LTE service equipment and LTE

core solutions to providers that are in the same business as LigTel. BaiCells Technologies North America Inc. is a Texas for-profit corporation. Defendant BaiCells Technologies Inc. is a Delaware corporation. Defendants' principal place of business in Plano, Texas. Defendants do business in Indiana, including by selling equipment to companies in Indiana

> **ANSWER:**   Defendant Baicells Technologies North America Inc. admits that it is an equipment vendor that provides Long-Term Evolution ("LTE") wireless broadband access solutions supporting fixed wireless broadband.  Baicells Technologies North America Inc. admits that it is a Texas corporation, with a mailing address in Plano, Texas.  Baicells Technologies North America Inc admits that it does business in Indiana, and has sold equipment to companies in Indiana.  Defendant Baicells Technologies North America Inc. denies any remaining allegations contained in Paragraph 12 of the Complaint.  Defendant Baicells Technologies Inc. admits that it is a Delaware corporation.  Defendant Baicells Technologies Inc. denies the remaining allegations contained in Paragraph 12 of the Complaint.

## JURISDICTION AND VENUE

13.      This Court has subject matter jurisdiction over LigTel's claims arising under the federal Lanham Act and the trade secrets law pursuant to 28 U.S.C. § 1331.

> **ANSWER:**   Baicells admits the allegations contained in Paragraph 13 of the Complaint.

14.     This Court has subject matter jurisdiction over LigTel's state-law claims pursuant to 28 U.S.C. § 1367(a) and 28 U.S.C. § 1332, because LigTel and BaiCells are citizens of different states and the amount in controversy exceeds $75,000.

> **ANSWER:**     Baicells is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Paragraph 14 of the Complaint, except that Baicells admits that Baicells and LigTel are citizens of different states.

15.     Venue is proper in this district under 28 U.S.C. § 1391(b)(2), because the events giving rise to LigTel's claims occurred in this district. Additionally, BaiCells conducts business in this district.

> **ANSWER:**     Baicells admits the allegations contained in Paragraph 15 of the Complaint.

## BACKGROUND

### I. HNI Codes Are Unique To Each Cellular Network Provider.

16.     An International Mobile Subscriber Identity ("IMSI") is a number that uniquely identifies every user of a cellular network.

> **ANSWER:**     Baicells admits the allegations contained in Paragraph 16 of the Complaint.

17.     An IMSI is used whenever there is a need to identify a particular cellular network user. For example, wireless telephone providers use IMSIs to determine which cellular network the cellular user subscribes to, to manage customers roaming on another provider's network and to determine what (if any) roaming charges are required. Additionally, law enforcement officials

use IMSIs to identify particular cellular phone users, such as when obtaining a legally authorized subpoena or warrant for that phone or user.

> **ANSWER:**   Baicells admits that an IMSI can be used to identify a particular cellular network user.  Baicells denies that an IMSI is used whenever there is need to identify a particular cellular network user.  Baicells denies the allegations contained in the second sentence of paragraph 17 of the Complaint.  Baicells is without sufficient knowledge or information to form a belief as to the truth or falsity of the remaining allegations contained in Paragraph 17 of the Complaint.

18.     In the United States, IMSIs are fifteen digits long.

> **ANSWER:**   Baicells admits the allegation contained in Paragraph 18 of the Complaint.

19.     The first six digits of the IMSI, called the Home Network Identity ("HNI") code or Public Land Mobile Network ("PLMN"), "uniquely identify the home network of the terminal/user." IMSI Assignment and Management Guidelines and Procedures § 5.3 (Aug. 2018),   https://www.atis.org/01_committ_forums/ioc/docs/IMSI-Guidelines-v15.1.1.pdf.   The first three digits of the HNI code are the mobile country code, which identifies the country in which the cellular network operates. For countries in North America, the number begins with "3" (e.g., 310, 311, 312, 313, 314, 315, and 316 for the United States). Numbers in other geographic regions, for example, begin with "2" (Europe) or "6" (Africa). The second three numbers in the HNI code identify the mobile network operator to which the cellular user subscribes within the country identified by the first three numbers in the HNI code. The vast

majority of the more than 400 HNI codes issued to providers in the United States end in zero. *See* "HNI Assignments," http://imsiadmin.com/assignments (last visited Jan. 21, 2020).

> **ANSWER:**   Baicells denies the allegations contained in the first and fifth sentences of Paragraph 19 of the Complaint.  Baicells admits the remaining allegations contained in Paragraph 19 of the Complaint.

20.     The remaining nine digits of the IMSI, known as the mobile subscription identification number, identify a particular user within that network.

> **ANSWER:**   Baicells denies the allegations contained in Paragraph 20 of the Complaint.

21.     The IMSI Oversight Council, an open industry committee of the Alliance for Telecommunications Industry Solutions (ATIS), an organization that develops technical and operational standards and solutions for the telecommunications industry, oversees administration of IMSIs and HNI codes. IMSI Oversight Council charges fees to providers to obtain and maintain an HNI code.

> **ANSWER:**   Baicells admits the allegation contained in Paragraph 21 of the Complaint.

22.     The International Telecommunication Union (ITU), an agency of the United Nations, has issued rules that prohibit transmissions with false or misleading identification— including using another carrier's HNI code without written documented approval. In addition, IMSI guidelines issued by the IMSI Oversight Council require HNI owners to assign, efficiently manage, and maintain up-to-date and accurate assignment records relating to their mobile terminals and users. IMSI Assignment and Management Guidelines and Procedures § 12.0 (Aug. 2018), https://www.atis.org/01_committ_forums/ioc/docs/IMSI-Guidelines-v15.1.1.pdf.

> **ANSWER:** Baicells is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Paragraph 22 of the Complaint, except that Baicells admits that the IMSI Oversight Council issues IMSI guidelines with requirements regarding HNI codes.

23.     It is important for wireless carriers and others to correctly identify the network of a particular cellular user. For example, when a law enforcement agency has a properly authorized subpoena or warrant for a cellular user, law enforcement uses the HNI code to identify that user's network and serve process on that network's provider. Additionally, when a wireless carrier identifies a device that is causing network interference, the carrier uses the HNI code to determine the carrier causing the interference.

> **ANSWER:** Baicells is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Paragraph 23 of the Complaint.

24.     IMSI Oversight Counsel assigned HNI code 311980 to LigTel in November 2011. LigTel has continuously used HNI code 311980 in its mobile operations since that date.

> **ANSWER:** Baicells is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Paragraph 24 of the Complaint, except that Baicells admits that the IMSI Oversight Counsel assigned HNI code 311-980 to LigTel Communications.

**II.     LigTel Deploys a New Huawei LTE Core in 2012.**

25.     In 2012, LigTel purchased an LTE core from Huawei to use for its cellular network. LigTel was the first provider to commercially deploy a Huawei LTE core in North America.

> **ANSWER:**   Baicells is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Paragraph 25 of the Complaint.

26.     To ensure the core would operate as intended, LigTel entered into a non-disclosure agreement with Huawei and provided Huawei with confidential and proprietary trade secrets related to LigTel's wireless network. Among other things, that information included: LigTel's radio frequency configurations, its IP infrastructure (both physical and logical), its network engineering and architecture, the technologies LigTel employed to connect its networks, and LigTel's encryption code for ensuring that communications between the core and LigTel's subscribers remained confidential.

> **ANSWER:**   Baicells is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Paragraph 26 of the Complaint.

27.     Scott Xingang Liang and Yingzhe Ding were employed at Huawei during the time LigTel's LTE core was deployed.

> **ANSWER:**   Baicells is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Paragraph 27 of the Complaint.

28.     Ronald Mao was also one of the employees at Huawei who worked directly with LigTel on technical aspects of projects related to LigTel's LTE core. Mao had access to LigTel's confidential trade secrets, including LigTel's encryption code and network design.

> **ANSWER:**    Baicells admits that Ronald Mao had communications with LigTel while
> Mao was employed by Huawei.  Baicells denies the remaining allegations
> contained in Paragraph 28 of the Complaint.

### III. Former Huawei Employees Create BaiCells, Which is Caught Using LigTel's HNI Code Without Authorization.

29.    In 2014, Liang and Ding founded BaiCells after leaving Huawei. BaiCells hired Mao as a technical advisor.

> **ANSWER:**    Baicells admits that it hired Ronald Mao.  Baicells denies the remaining
> allegations contained in Paragraph 29 of the Complaint.

30.    BaiCells and LigTel have never done business together. Before June 2019, the two companies had never had any contact with each other or otherwise had any dealings whatsoever.

> **ANSWER:**    Baicells admits the allegations contained in Paragraph 30 of the
> Complaint.

31.    In June 2019, LigTel was contacted by a wireless service provider in northeast Colorado, which reported that it had discovered interference caused by a wireless signal generated by LigTel originating in Nebraska. The Colorado provider identified the signal causing the interference as LigTel's because it identified LigTel's HNI code as associated with the signal.

> **ANSWER:**    Baicells is without sufficient knowledge or information to form a belief as
> to the truth or falsity of the allegations contained in Paragraph 31 of the
> Complaint.

32.    An investigation revealed that the interference was coming from a provider in Nebraska that was using equipment from BaiCells that was engineered to use a single HNI code provided by BaiCells. LigTel investigated further and discovered that BaiCells had been

instructing purchasers to configure its equipment using HNI code 31198, which the equipment and providers interpreted as 311980—LigTel's HNI code.

> **ANSWER:**  Baicells is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Paragraph 32 of the Complaint.

33.     BaiCells's public website and other communications directed to industry, customers, and potential customers—including online updates, technical documents, and other materials—contained instructions for using LigTel's HNI code in BaiCells's equipment.

> **ANSWER:**  Baicells denies the allegations contained in Paragraph 33 of the Complaint.

34.     At that time, LigTel had not authorized the Nebraska provider or BaiCells to use LigTel's HNI code.

> **ANSWER:**  Baicells denies the allegations contained in Paragraph 34 of the Complaint, except (i) Baicells admits that LigTel has not authorized Baicells to use LigTel's HNI code and (ii) Baicells is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations regarding "the Nebraska Provider".

35.     As part of a reasonable investigation to determine the scope and potential impacts of BaiCells's use of LigTel's HNI code, LigTel then contacted an Indiana company that serves more than a dozen Indiana communities and has purchased hosted core services from BaiCells. The Indiana provider confirmed that it had been directed by BaiCells to use HNI code 311980— LigTel's HNI code.

> **ANSWER:**   Baicells is without sufficient knowledge or information to form a belief as
> to the truth or falsity of the allegations contained in Paragraph 35 of the
> Complaint.

36.     At the time, LigTel had not authorized the Indiana provider or BaiCells to use LigTel's HNI code.

> **ANSWER:**   Baicells denies the allegations contained in Paragraph 36 of the
> Complaint, except (i) Baicells admits that LigTel has not authorized
> Baicells to use LigTel's HNI code and (ii) Baicells is without sufficient
> knowledge or information to form a belief as to the truth or falsity of the
> allegations regarding "the Indiana provider".

**IV.     BaiCells Refuses To Stop Using LigTel's HNI Code Or To Resolve The Issue, And Instead Threatens To Gain Access To LigTel's Core To Reprogram It.**

37.     Shortly after LigTel discovered that BaiCells had been using LigTel's HNI code without permission, LigTel and BaiCells met at LigTel's offices in Ligonier. On the BaiCells side, the meeting was attended by Rick Harnish, BaiCells Director of WISP Markets in North America; Bo Wei, North American President of BaiCells; and Ronald Mao, the BaiCells technical advisor who worked on LigTel's core when he was formerly employed at Huawei. On the LigTel side, the meeting was attended by Randy Mead, LigTel's CEO and General Manager, Josh Wentworth, LigTel's Network Operations Supervisor, and counsel for LigTel.

> **ANSWER:**   Baicells admits that on July 29, 2019, representatives of Baicells
> Technologies North America Inc., including Bo Wei, General Manager;
> Rick Harnish, Chief Marketing Officer; and Ronald Mao, Director of
> Carrier Solutions, met with representatives of LigTel, including Randy

- 14 -

Mead, CEO and General Manager; Josh Wentworth, Network Operations

Supervisor, and LigTel's outside counsel, at LigTel's offices in Ligonier,

Indiana.  Baicells denies the remaining allegations contained in Paragraph

37 of the Complaint.

38.      At the meeting, LigTel made two offers. First, LigTel requested that BaiCells stop

using LigTel's HNI code and migrate all its customers to BaiCells's own HNI code. BaiCells

appeared unwilling to do so—even claiming that changing HNI codes was logistically

impossible. Second, because BaiCells operates with tens of thousands of customers nationwide

(as opposed to LigTel's 1,500 wireless service customers in Indiana), LigTel offered to obtain a

new HNI code, switch its customers to the second HNI code, and transfer the original HNI code

to BaiCells, in exchange for a reasonable fee that would cover LigTel's costs and reasonably

compensate LigTel for the inconvenience. BaiCells again refused.

**ANSWER:**   Baicells admits that LigTel demanded money from Baicells at the

meeting.  Baicells denies the remaining allegations contained in Paragraph

38 of the Complaint.

39.       For its part, BaiCells's proposals involved continuing to use LigTel's HNI code.

For example, BaiCells proposed to acquire LigTel's HNI code and to grant LigTel a right to use

that number. BaiCells alternatively proposed to implement software that would continue to use

LigTel's HNI code. Both of BaiCells's offers, however, would not have alleviated the harm to

LigTel or avoided future risk and confusion because subscribers to LigTel's network and any

network using BaiCells equipment would continue to be identified by the same HNI code.

**ANSWER:**   Baicells denies the allegations contained in Paragraph 39 of the

Complaint.

- 15 -

40.     BaiCells did not attempt to explain much less justify its unauthorized use of LigTel's HNI code, and suggested that it intended to use LigTel's HNI code in perpetuity.

**ANSWER:**     Baicells denies the allegations contained in Paragraph 40 of the Complaint.

41.     At an impasse, Wei requested a private side-bar meeting with Mead. Wei reported that he knew that LigTel's core was manufactured by Huawei, though Mead had never shared that information with Wei or the other BaiCells employees, and asked if Mead knew that Mao formerly worked at Huawei. Wei then proposed that he could have Mao "get into" LigTel's core and reprogram it for free, without informing Huawei. Mead interpreted Wei's offer as implying that Mao could do the work on LigTel's core without LigTel providing him with proprietary trade secret information—such as the network design or encryption code. In other words, Mead viewed the offer as a threat that Mao would attempt to gain access to LigTel's core without LigTel's permission. Wei also offered to sell BaiCells equipment to LigTel at a deep discount. Mead then ended the side-bar meeting and the parties eventually agreed to adjourn discussions.

**ANSWER:**     Baicells denies the allegations contained in Paragraph 41 of the Complaint.

42.     Since the meeting, BaiCells has not agreed to return LigTel's trade secrets, to not use those trade secrets, or to not threaten to use those trade secrets.

**ANSWER:**     Baicells denies the allegations contained in Paragraph 42 of the Complaint.

43.     BaiCells now has its own HNI code, 314030. But BaiCells has not actually migrated its customers to that code or stopped using LigTel's code. Instead, BaiCells has continued to publish LigTel's HNI code on BaiCells's website and continued to instruct new

customers to use LigTel's HNI code. Thus, the number of Baicells customers using LigTel's HNI code without authorization continues to increase.

> **ANSWER:**   Baicells Technologies North America Inc. admits that it has been assigned HNI code 314-030.  Baicells denies the remaining allegations contained in Paragraph 43 of the Complaint .

44.     LigTel also attempted to resolve the HNI-code issue through ATIS, which offers parties a way to attempt to voluntarily resolve disputes related to HNI codes without interfering with the parties' right to pursue relief elsewhere. But that process has proved ineffective— among other things, BaiCells has refused to propose an acceptable or credible resolution to the situation, has failed to provide a binding and detailed timeline of when it will cease using LigTel's HNI code, and has intimated that it may take the position that ATIS lacks authority to order relief. Meanwhile, LigTel has suffered and will continue to suffer irreparable harm as a result of BaiCells's misconduct. LigTel lacks confidence that the ATIS process will adequately resolve its HNI-code issues (if at all), and LigTel's trade secret-related issues are outside the scope of the ATIS process. LigTel therefore brings this action.

> **ANSWER:**   Baicells denies the allegations contained in Paragraph 44 of the Complaint.

## **FIRST CAUSE OF ACTION**

### **(Lanham Act—False Designation of Origin)**

45.     LigTel repeats and incorporates by reference the preceding paragraphs as though fully set forth herein.

> **ANSWER:**   Baicells incorporates by reference its answers to Paragraphs 1 through 44 of the Complaint.

46.     The Lanham Act, 15 U.S.C. § 1125(a), prohibits the use in commerce of any false designation of origin which is likely to cause confusion, mistake, or to deceive as to the origin or approval of goods or services.

    **ANSWER:**   Paragraph 46 of the Complaint states a legal conclusion to which no response is required.  To the extent Paragraph 46 contains any factual allegations, Baicells denies same.

47.     BaiCells's use of LigTel's HNI code falsely designates signals using BaiCells's equipment as originating with LigTel.

    **ANSWER:**   Baicells denies the allegations contained in Paragraph 47 of the Complaint.

48.     BaiCells is putting these services into interstate commerce, selling products to locations across the country (including in Indiana).

    **ANSWER:**   Baicells admits that it sells products in several states, including Indiana. Baicells denies the remaining allegations contained in Paragraph 48 of the Complaint.

49.     BaiCells's use of LigTel's HNI code misrepresents the signal coming from BaiCells's equipment as LigTel's signal. This creates a high likelihood of confusion among other wireless service providers, which will think that any problems or interference caused by BaiCells's equipment are actually problems caused by LigTel and that LigTel is not complying with ITU and ATIS communications rules. As a result, LigTel's name and reputation is being denigrated in the marketplace as a result of BaiCells's conduct.

    **ANSWER:**   Baicells denies the allegations contained in Paragraph 49 of the Complaint.

50.      That some have already been confused and deceived as to the origin of the signal coming from BaiCells's equipment demonstrates that BaiCells's false designation of origin and false and misleading representation have caused and are likely to continue to cause confusion and deception.

> **ANSWER:**     Baicells denies the allegations contained in Paragraph 50 of the
>
> Complaint.

51.      LigTel will suffer irreparable harm from, and has no adequate remedy at law for, BaiCells's ongoing false designation of the wireless signal from BaiCells's equipment as LigTel's signal. As a result of BaiCells's actions and the confusion it causes, LigTel's reputation and goodwill is damaged, other network providers will not give LigTel favorable terms when negotiating cross-border and interoperability agreements, and LigTel's customers may suffer reductions in service and lose confidence in the security and reliability of LigTel's network.

> **ANSWER:**     Baicells denies the allegations contained in Paragraph 51 of the
>
> Complaint.

52.      Issuing an injunction will harm BaiCells less than denying an injunction would harm LigTel.

> **ANSWER:**     Baicells denies the allegations contained in Paragraph 52 of the
>
> Complaint.

53.      The public interest will be served by issuing an injunction because eliminating the confusion caused by BaiCells's action will mitigate the risks to public safety and network integrity that BaiCells is causing. In particular, BaiCells's use of LigTel's HNI code could cause grave harm to the public by leading law enforcement to obtain a subpoena or warrant relating to someone that appears to be a LigTel subscriber, based on the HNI code in the subscriber's IMSI, but who is not

actually a LigTel subscriber. In that event, LigTel could not comply with the lawful process and could not aid law enforcement in obtaining the sought-after information.

> **ANSWER:**   Baicells denies the allegations contained in Paragraph 53 of the
> Complaint.

54.    These harms are magnified because LigTel is unaware of the full scope of BaiCells's use of LigTel's HNI code—LigTel cannot determine how many subscribers in how many jurisdictions appear to be LigTel subscribers based on their HNI code but are not actually LigTel subscribers.

> **ANSWER:**   Baicells denies the allegations contained in Paragraph 54 of the
> Complaint.

### SECOND CAUSE OF ACTION

### (Lanham Act—False or Misleading Representation)

55.    LigTel repeats and incorporates by reference the preceding paragraphs as though fully set forth herein.

> **ANSWER:**   Baicells incorporates by reference its answers to Paragraphs 1 through 54
> of the Complaint.

56.    The Lanham Act, 15 U.S.C. § 1125(a), prohibits the use in commerce of any false or misleading representation of fact which is likely to cause confusion, mistake, or to deceive as to the origin or approval of goods or services.

> **ANSWER:**   Paragraph 56 of the Complaint states a legal conclusion to which no
> response is required.  To the extent Paragraph 56 contains any factual
> allegations, Baicells denies same.

57.     BaiCells is falsely and misleadingly representing that it is authorized to use HNI code 311980 by instructing its customers to program their equipment so that it uses that HNI code. This false and misleading representation is causing deception as to the true provider of network services using BaiCells's equipment.

**ANSWER:**     Baicells denies the allegations contained in Paragraph 57 of the Complaint.

58.     BaiCells is putting these services into interstate commerce, selling products to locations across the country (including in Indiana).

**ANSWER:**     Baicells admits that it sells products in several states, including Indiana. Baicells denies the remaining allegations contained in Paragraph 58 of the Complaint.

59.     BaiCells's use of LigTel's HNI code misrepresents the signal coming from BaiCells's equipment as LigTel's signal. This creates a high likelihood of confusion among other wireless service providers, who will think that any problems or interference caused by BaiCells's equipment are actually problems caused by LigTel and that LigTel is not complying with ITU and ATIS communications rules. As a result, LigTel's name and reputation is being denigrated in the marketplace as a result of BaiCell's conduct.

**ANSWER:**     Baicells denies the allegations contained in Paragraph 59 of the Complaint.

60.     That some have already been confused and deceived as to the origin of the signal coming from BaiCells's equipment demonstrates that BaiCells's false designation of origin and false and misleading representation have caused and are likely to continue to cause confusion and deception.

**ANSWER:**     Baicells denies the allegations contained in Paragraph 60 of the

Complaint.

61.     LigTel will suffer irreparable harm from, and has no adequate remedy at law for, BaiCells's ongoing false designation of the wireless signal from BaiCells's equipment as LigTel's signal. As a result of BaiCells's actions and the confusion it causes, LigTel's reputation and goodwill is damaged, other network providers will not give LigTel favorable terms when negotiating cross-border and interoperability agreements, and LigTel's customers may suffer reductions in service and lose confidence in the security and reliability of LigTel's network.

**ANSWER:**     Baicells denies the allegations contained in Paragraph 61 of the

Complaint.

62.     Issuing an injunction will harm BaiCells less than denying an injunction would harm LigTel.

**ANSWER:**     Baicells denies the allegations contained in Paragraph 62 of the

Complaint.

63.     The public interest will be served by issuing an injunction because eliminating the confusion caused by BaiCells's action will mitigate the risks to public safety and network integrity that BaiCells is causing. In particular, BaiCells's use of LigTel's HNI code could cause grave harm to the public by leading law enforcement to obtain a subpoena or warrant relating to someone that appears to be a LigTel subscriber, based on the HNI code in the subscriber's IMSI, but who is not actually a LigTel subscriber. In that event, LigTel could not comply with the lawful process and could not aid law enforcement in obtaining the sought-after information.

**ANSWER:**     Baicells denies the allegations contained in Paragraph 63 of the

Complaint.

64.     These harms are magnified because LigTel is unaware of the full scope of BaiCells's use of LigTel's HNI code—LigTel cannot determine how many subscribers in how many jurisdictions appear to be LigTel subscribers based on their HNI code but are not actually LigTel subscribers.

> **ANSWER:**     Baicells denies the allegations contained in Paragraph 64 of the Complaint.

## THIRD CAUSE OF ACTION

### (Indiana Common Law Unfair Competition)

65.     LigTel repeats and incorporates by reference the preceding paragraphs as though fully set forth herein.

> **ANSWER:**     Baicells incorporates by reference its answers to Paragraphs 1 through 64 of the Complaint.

66.     Indiana recognizes a property right in the goodwill and reputation that a party has developed in a business, and recognizes a common-law cause of action for unfair competition in a similar vein to claims under the Lanham Act. *See Woodard v. Jackson*, 2004 WL 771244, at *9 (S.D. Ind. Mar. 25, 2004).

> **ANSWER:**     Paragraph 66 of the Complaint states a legal conclusion to which no response is required.  To the extent Paragraph 66 contains any factual allegations, Baicells denies same.

67.     BaiCells is causing confusion and deception by falsely designating the origin of its network infrastructure as LigTel's network and falsely and misleadingly representing that it is authorized to use LigTel's HNI code. Accordingly, BaiCells is unfairly competing in the market for cellular network service providers.

> **ANSWER:**   Baicells denies the allegations contained in Paragraph 67 of the
>
> Complaint.

68.     BaiCells's use of LigTel's HNI code misrepresents the signal coming from BaiCells's equipment as LigTel's signal. This creates a high likelihood of confusion among other wireless service providers, who will think that any problems or interference caused by BaiCells's equipment are actually problems caused by LigTel and that LigTel is not complying with ITU and ATIS communications rules. As a result, LigTel's name and reputation is being denigrated in the marketplace as a result of BaiCells's conduct.

> **ANSWER:**   Baicells denies the allegations contained in Paragraph 68 of the
>
> Complaint.

69.     That some have already been confused and deceived as to the origin of the signal coming from BaiCells's equipment demonstrates that BaiCells's false designation of origin and false and misleading representation have caused and are likely to continue to cause confusion and deception.

> **ANSWER:**   Baicells denies the allegations contained in Paragraph 69 of the
>
> Complaint.

70.     LigTel will suffer irreparable harm from, and has no adequate remedy at law for, BaiCells's ongoing false designation of the wireless signal from BaiCells's equipment as LigTel's signal. As a result of BaiCells's actions and the confusion it causes, LigTel's reputation and goodwill is damaged, other network providers will not give LigTel favorable terms when negotiating cross-border and interoperability agreements, and LigTel's customers may suffer reductions in service and lose confidence in the security and reliability of LigTel's network.

> **ANSWER:**    Baicells denies the allegations contained in Paragraph 70 of the
>
> Complaint.

71.    Issuing an injunction will harm BaiCells less than denying an injunction would harm LigTel.

> **ANSWER:**    Baicells denies the allegations contained in Paragraph 71 of the
>
> Complaint.

72.    The public interest will be served by issuing an injunction because eliminating the confusion caused by BaiCells's action will mitigate the risks to public safety and network integrity that BaiCells is causing. In particular, BaiCells's use of LigTel's HNI code could cause grave harm to the public by leading law enforcement to obtain a subpoena or warrant relating to someone that appears to be a LigTel subscriber, based on the HNI code in the subscriber's IMSI, but who is not actually a LigTel subscriber. In that event, LigTel could not comply with the lawful process and could not aid law enforcement in obtaining the sought-after information.

> **ANSWER:**    Baicells denies the allegations contained in Paragraph 72 of the
>
> Complaint.

73.    These harms are magnified because LigTel is unaware of the full scope of BaiCells's use of LigTel's HNI code—LigTel cannot determine how many subscribers in how many jurisdictions appear to be LigTel subscribers based on their HNI code but are not actually LigTel subscribers.

> **ANSWER:**    Baicells denies the allegations contained in Paragraph 73 of the
>
> Complaint.

## FOURTH CAUSE OF ACTION

### (Federal Trade Secrets Law)

74.     LigTel repeats and incorporates by reference the preceding paragraphs as though fully set forth herein.

> **ANSWER:**     Baicells incorporates by reference its answers to Paragraphs 1 through 73 of the Complaint.

75.     Federal law prohibits the misappropriation of trade secrets that are related to a product or service used in interstate commerce. 18 U.S.C. § 1836.

> **ANSWER:**     Paragraph 75 of the Complaint states a legal conclusion to which no response is required.  To the extent Paragraph 75 contains any factual allegations, Baicells denies same.

76.     BaiCells has misappropriated LigTel's trade secrets, including LigTel's encryption code and its network architecture, design, and engineering.

> **ANSWER:**     Baicells denies the allegations contained in Paragraph 76 of the Complaint.

77.     BaiCells revealed that it has obtained LigTel's trade secrets by threatening to have Mao "get into" LigTel's LTE core and reconfigure it without needing to work with Huawei or LigTel to do so.

> **ANSWER:**     Baicells denies the allegations contained in Paragraph 77 of the Complaint.

78.     BaiCells did not randomly select LigTel's HNI code out of the nearly 400 codes available. Rather, BaiCells selected LigTel's HNI code because BaiCells possessed LigTel's trade secrets. BaiCells misappropriated LigTel's trade secrets willfully, maliciously, and in bad faith.

- 26 -

**ANSWER:**    Baicells denies the allegations contained in Paragraph 78 of the

Complaint.

79.    BaiCells is putting its goods and services into interstate commerce, selling products to locations across the country (including in Indiana). LigTel also uses its own services in interstate commerce, because its customers in Indiana use LigTel's services to conduct business throughout the United States.

**ANSWER:**    Baicells admits that it sells products in several states, including Indiana.

Baicells denies the remaining allegations contained in Paragraph 79 of the

Complaint.

80.    LigTel will suffer irreparable harm from, and have no adequate remedy at law for, the harm caused by BaiCells's misappropriation of LigTel's trade secrets. BaiCells's possession of LigTel's encryption code and network architecture, engineering, and design would allow BaiCells to access LigTel's network design and engineering, decrypt communications between LigTel's subscribers and LigTel's network, and gain unauthorized access to LigTel's network. This creates a serious risk to LigTel's network integrity and security and poses a potential disruption to services for all of LigTel's customers. BaiCells also suggested that it could profit from its unlawful possession of LigTel's trade secrets, by squeezing LigTel into buying new equipment from BaiCells.

**ANSWER:**    Baicells denies the allegations contained in Paragraph 80 of the

Complaint.

81.    Issuing an injunction will harm BaiCells less than denying an injunction would harm LigTel.

> **ANSWER:**   Baicells denies the allegations contained in Paragraph 81 of the
>
> Complaint.

82.     The public interest will be served by issuing an injunction because BaiCells's misappropriation of  LigTel's trade secrets, including its encryption code and network architecture, puts the integrity and security of LigTel's network at risk, which could harm LigTel's subscribers and members of the public that rely on LigTel's network.

> **ANSWER:**   Baicells denies the allegations contained in Paragraph 82 of the
>
> Complaint.

83.     These harms are magnified because LigTel is unaware of the full scope of BaiCells's misappropriation of LigTel's trade secrets.

> **ANSWER:**   Baicells denies the allegations contained in Paragraph 83 of the
>
> Complaint.

## FIFTH CAUSE OF ACTION

### (Indiana Uniform Trade Secrets Act)

84.     LigTel repeats and incorporates by reference the preceding paragraphs as though fully set forth herein.

> **ANSWER:**   Baicells incorporates by reference its answers to Paragraphs 1 through 83
>
> of the Complaint.

85.     The Indiana Uniform Trade Secrets Act allows a court to enjoin the actual or threatened misappropriation of LigTel's trade secrets. Ind. Code Ann. § 24-2-3-3.

> **ANSWER:**   Paragraph 85 of the Complaint states a legal conclusion to which no
>
> response is required.  To the extent Paragraph 85 contains any factual
>
> allegations, Baicells denies same.

86.     BaiCells has actually misappropriated or threatened to misappropriate LigTel's trade secrets, including LigTel's network encryption code and its network architecture, design, and engineering.

> **ANSWER:**     Baicells denies the allegations contained in Paragraph 86 of the Complaint.

87.     BaiCells revealed that it has obtained LigTel's trade secrets by threatening to have Mao "get into" LigTel's LTE core and reconfigure it without needing to work with Huawei or LigTel to do so. That statement constitutes a threat to misappropriate LigTel's trade secrets.

> **ANSWER:**     Baicells denies the allegations contained in Paragraph 87 of the Complaint.

88.     BaiCells did not randomly select LigTel's HNI code out of the nearly 400 codes available. Rather, BaiCells selected LigTel's HNI code because BaiCells possessed LigTel's trade secrets. BaiCells misappropriated LigTel's trade secrets willfully, maliciously, and in bad faith.

> **ANSWER:**     Baicells denies the allegations contained in Paragraph 88 of the Complaint.

89.     BaiCells is putting its goods and services into interstate commerce, selling products to locations across the country (including in Indiana). LigTel also uses its own services in interstate commerce, because its customers in Indiana use LigTel's services to conduct business throughout the United States.

> **ANSWER:**     Baicells admits that it sells products in several states, including Indiana. Baicells denies the remaining allegations contained in Paragraph 89 of the Complaint.

90.     LigTel will suffer irreparable harm from, and have no adequate remedy at law for, the harm caused by BaiCells's misappropriation of LigTel's trade secrets. BaiCells's possession of LigTel's encryption code and network architecture, engineering, and design would allow BaiCells to access LigTel's network design and engineering, decrypt communications between LigTel's subscribers and LigTel's network, and gain unauthorized access to LigTel's network. This creates a serious risk to LigTel's network integrity and security and poses a potential disruption to services for all of LigTel's customers. BaiCells also suggested that it could profit from its unlawful possession of LigTel's trade secrets, by squeezing LigTel into buying new equipment from BaiCells.

**ANSWER:**     Baicells denies the allegations contained in Paragraph 90 of the Complaint.

91.     Issuing an injunction will harm BaiCells less than denying an injunction would harm LigTel.

**ANSWER:**     Baicells denies the allegations contained in Paragraph 91 of the Complaint.

92.     The public interest will be served by issuing an injunction because BaiCells's misappropriation of LigTel's trade secrets, including its encryption code and network architecture, puts the integrity and security of LigTel's network at risk, which could harm LigTel's subscribers and members of the public that rely on LigTel's network.

**ANSWER:**     Baicells denies the allegations contained in Paragraph 92 of the Complaint.

93.     These harms are magnified because LigTel is unaware of the full scope of BaiCells's use of LigTel's trade secrets.

**ANSWER:**   Baicells denies the allegations contained in Paragraph 93 of the

Complaint.

## **AFFIRMATIVE AND OTHER DEFENSES**

If necessary and/or in the alternative, Baicells raise the following affirmative defenses,

but reserve the right to amend this Answer to raise any additional affirmative defenses which

it may have against Plaintiff's claims:

1.      The Complaint, in whole or in part, fails to state a claim upon which relief can be

granted against Baicells.

2.      Plaintiff's claims are barred, in whole or in part, by the doctrine of laches.

3.      Plaintiff's claims are barred, in whole or in part, by the doctrine of estoppel by

acquiescence.

4.      Plaintiff's claims are barred, in whole or in part, by the doctrine of unclean hands.

5.      Plaintiff's claims are barred, in whole or in part, by the doctrine of mistake.

6.      Plaintiff's claims are barred, in whole or in part, by Plaintiff lacking trade secret

rights.

7.      Plaintiff's claims are barred, in whole or in part, by the doctrine of abandonment.

8.      Plaintiff's Lanham Act claims are barred, in whole or in part, by Plaintiff lacking

trademark rights.

9.      Plaintiff's Lanham Act claims are barred, in whole or in part, by the doctrine of

functionality.

10.     Plaintiff's Lanham Act claims are barred, in whole or in part, by the doctrine of

fair use.

WHEREFORE, Baicells requests that judgment be entered in their favor and against LigTel on all counts, and that Baicells be awarded its costs and any other relief to which it may be entitled, including attorney's fees.

Respectfully submitted,

ICE MILLER LLP


*/s/ Adam Arceneaux*
Adam Arceneaux, Attorney No. 17219-49
Eric J. McKeown, Attorney No. 27597-49
Jessa DeGroote, Attorney No. 358487-49

***Attorneys for Defendants, Baicells Technologies
Inc. and Baicells Technologies North America Inc.***

One American Square
Suite 2900
Indianapolis, IN  46282-0200
Phone:  (317) 236-2100
Fax:    (317) 236-2219
Adam.Arceneaux@icemiller.com
Eric.McKeown@icemiller.com
Jessa.DeGroote@icemiller.com

## CERTIFICATE OF SERVICE

I hereby certify that on March 11, 2020, a copy of the foregoing was filed electronically. Notice of this filing will be sent to the parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.


*/s/ Adam Arceneaux*
Adam Arceneaux, Attorney No. 17219-49

ICE MILLER LLP
One American Square
Suite 2900
Indianapolis, IN  46282-0200
Adam.Arceneaux@icemiller.com