**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**

| | |
|---|---|
| LIGTEL COMMUNICATIONS, INC., <br><br>                   Plaintiff, <br><br>      v. <br><br> BAICELLS TECHNOLOGIES INC.; <br> BAICELLS TECHNOLOGIES NORTH AMERICA <br> INC., <br><br>                   Defendants. | Case No. 1:20-cv-00037-HAB-SLC |

**PRE-HEARING MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

## TABLE OF CONTENTS

INTRODUCTION ...............................................................................................................1

BACKGROUND ...............................................................................................................3

II.      HNI Codes Are Assigned To Carriers To Identify A Mobile Telephone User's Network.................................................................................................................3

III.     LigTel Obtains HNI Code 311980 And Deploys A Cutting-Edge Network Featuring A Huawei LTE Core.................................................................................5

IV.     Baicells, Founded By And Employing Former Huawei Personnel, Uses 31198 As Its HNI Code Despite Knowing HNI Codes Are Six Digits................................................7

V.      Confused Carriers Lead LigTel to Discover That Baicells Is Using An HNI Code That Appears To Be LigTel's, But Baicells Refuses To Stop ............................................8

VI.    LigTel Seeks Relief From ATIS, Which Finds That Baicells Is Improperly Using LigTel's HNI Code But Is Unable To Remedy LigTel's Irreparable Harm.....................11

STANDARD OF REVIEW ...............................................................................................12

ARGUMENT ...................................................................................................................12

I.       Absent A Preliminary Injunction, LigTel Will Continue To Suffer Irreparable Harm For Which It Has No Adequate Legal Remedy ........................................................12

II.      LigTel Is Likely To Succeed On The Merits ...................................................14

       A.     Baicells's Use Of 31198 Violates The Federal Lanham Act And Indiana Unfair Competition Law ...............................................................14

              1.     Baicells's use of 31198 is a "false designation of origin" under the Lanham Act because it passes off Baicells's signal as LigTel's.............15

              2.     Baicells's use of 31198 is a false or misleading representation under the Lanham Act.............................................................................19

              3.     Baicells' actions violate the Indiana common law prohibition on unfair competition. ..............................................................21

       B.     Baicells Has Misappropriated LigTel's Trade Secrets, In Violation Of Federal Law And Indiana Law ...............................................................22

III.     The Balance of Equities And Public Interest Favor A Preliminary Injunction ................24

CONCLUSION..................................................................................................25

i

**TABLE OF AUTHORITIES**

**Page(s)**

C<small>ASES</small>

*ACLU v. Clapper*,
 785 F.3d 787 (2d Cir. 2015)........................................................................................5

*B. Sanfield, Inc. v. Finlay Fine Jewelry Corp.*,
 168 F.3d 967 (7th Cir. 1999) ....................................................................................19

*Data Research & Handling, Inc. v. Vongphachanh*,
 278 F. Supp. 3d 1066 (N.D. Ind. 2017) ....................................................................20

*Dwyer Instruments, Inc. v. Sensocon, Inc.*,
 873 F. Supp. 2d 1015 (N.D. Ind. 2012) ....................................................................21

*Eli Lilly & Co. v. Nat. Answers, Inc.*,
 233 F.3d 456 (7th Cir. 2000) ...............................................................14, 16, 17, 19

*Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S. of Am., Inc.*,
 549 F.3d 1079 (7th Cir. 2008) ..................................................................................12

*HCAFranchise Corp. v. Alisch*,
 2016 WL 10706285 (N.D. Ind. Aug. 12, 2016)...................................................12, 24

*Heartland Recreational Vehicles, LLC v. Forest River, Inc.*,
 2009 WL 418079 (N.D. Ind. Feb. 18, 2009)............................................................15

*Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc.*,
 846 F.2d 1079 (7th Cir. 1988) .............................................................17, 18, 19

*Integrity Trade Servs., Inc. v. Integrity Employment Partners, LLC*,
 2015 WL 10934322 (N.D. Ind. May 20, 2015) .......................................................12

*Johnny Blastoff, Inc. v. Los Angeles Rams Football Co.*,
 188 F.3d 427 (7th Cir. 1999) ....................................................................................15

*Lincoln Chem. Corp. v. DuBois Chemicals, Inc.*,
 2012 WL 6553098 (N.D. Ind. Dec. 13, 2012) .......................................................13

*Promatek Indus., Inc. v. Equitrac Corp.*,
 300 F.3d 808 (7th Cir. 2002) ...........................................................................12, 25

*Ram Prod. Co. v. Chauncey*,
 967 F. Supp. 1071 (N.D. Ind. 1997) .......................................................................13

*Signal Fin. Holdings LLC v. Looking Glass Fin. LLC*,
 2018 WL 636769 (N.D. Ill. Jan. 31, 2018)..............................................................22

ii

*Ty, Inc. v. Jones Group, Inc.*,
    237 F.3d 891 (7th Cir. 2001) ..............................................................................14

*United States v. Hanjuan Jin*,
    733 F.3d 718 (7th Cir. 2013) ..............................................................................13

*United States v. House*,
    2015 WL 4111457 (W.D. Pa. July 8, 2015) ...........................................................4

*United States v. Lange*,
    312 F.3d 263 (7th Cir. 2002) ..............................................................................22

*United States v. Oliva*,
    705 F.3d 390 (9th Cir. 2012) ................................................................................5

*Valencia v. City of Springfield*,
    883 F.3d 959 (7th Cir. 2018) ..................................................................12, 14, 24

*VitalGo, Inc. v. Kreg Therapeutics, Inc.*,
    370 F. Supp. 3d 873, 889 (N.D. Ill. 2019) ..........................................................15

*Web Printing Controls Co., Inc. v. Oxy-Dry Corp.*,
    906 F.2d 1202 (7th Cir. 1990) ............................................................................15

*Williams Elecs., Inc. v. Bally Mfg. Corp.*,
    568 F. Supp. 1274 (N.D. Ill. 1983) .....................................................................20

**STATUTES**

15 U.S.C. § 1125(a) ....................................................................................................14

15 U.S.C. § 1127..........................................................................................................15

18 U.S.C. § 1836(b)(1) ...............................................................................................22

18 U.S.C. § 1839..........................................................................................................22

Ind. Code § 24-2-3-2....................................................................................................22

**OTHER AUTHORITIES**

*In the Matter of Requests for Waiver of Various Petitioners*
    *to Allow the Establishment of 700 Mhz Interoperable Pub.*
    *Safety Wireless Broadband Networks*,
    27 F.C.C. Rcd. 183 (2012)......................................................................................4

HNI Assignments,
    iconectiv IMSI, https://imsiadmin.com/assignments (last visited April 3, 2020)...............4, 15

International Mobile Subscriber Identity (IMSI),
    iconectiv IMSI, https://imsiadmin.com/ (last visited April 3, 2020) ........................................3

## INTRODUCTION

This Court should issue a preliminary injunction to stop Defendants Baicells Technologies, Inc. and Baicells Technologies North America, Inc. (together, "Baicells") from continuing to knowingly cause irreparable harm to Plaintiff LigTel Communications, Inc., a local wireless service provider.  Baicells is causing that harm in three distinct ways that LigTel is likely to show on the merits violate federal and Indiana state law.

*First*, LigTel has shown it is likely to succeed on the merits of its claim that Baicells is violating the federal Lanham Act and corresponding Indiana law by making it appear as though Baicells's wireless signal is being transmitted by LigTel.  The Lanham Act prohibits "false designation of origin" of goods and services, including where one company makes its offerings look like they come from another company.  That is exactly what Baicells is doing.  By using and directing its customers to use 31198 as a *five-digit* Home Network Identity (HNI) code—when Baicells knows HNI codes require *six digits* to identify the company that provides service to a network subscriber—Baicells is causing its equipment to emit a signal that looks like it is coming from LigTel, which uses HNI code 311980.  Baicells's intentional efforts to use an invalid HNI code that appears to the world as LigTel's valid one has already caused confusion and is likely to cause more.  Baicells should therefore be enjoined from using 31198 going forward.

*Second*, LigTel has shown it is likely to succeed on the merits of its claim that Baicells is violating the federal Lanham Act and corresponding Indiana law by presenting false or misleading representations about its HNI code.  LigTel has repeatedly used 31198 in communications to the public, customers, potential customers, and the greater telecommunication industry.  Each time, Baicells implicitly represents that its code is valid and that using it complies with applicable rules.  But that is not so.  There is no such thing as a five-digit HNI code in the United States and Baicells has not been authorized to use 31198.  Moreover, Baicells's use of 31198 is misleading because

1

that code appears to the world to be LigTel's—indeed the HNI administrator has said that 31198 "has been assigned" to LigTel—but Baicells has not been given permission to use LigTel's code. The evidence shows that Baicells's statements and use of 31198 have actually caused deception, and no reasonable person would purchase or use Baicells equipment that knowingly flouted applicable rules and could create legal jeopardy. So Baicells should be enjoined from continuing to make false and misleading statements about the use of 31198 as an HNI code.

*Third*, LigTel is likely to succeed on the merits of its claim that Baicells has misappropriated LigTel's trade secrets—including LigTel's encryption code, network architecture, and network engineering. LigTel has taken reasonable measures to secure those valuable pieces of information, which are critical to LigTel's business and subject to protection under federal and state law. Yet, at this preliminary stage, Baicells appears to have misappropriated those secrets. Baicells's founders left the company that built LigTel's critical infrastructure to create a competing company, and those founders hired a key engineer who specifically touted his work on LigTel's project. Then Baicells selected 31198 as its HNI "code"— out of millions of possible combinations—when it knew that HNI codes are six digits and that its five-digit code would appear to the world as LigTel's. Baicells's further suggestion that its key engineer could "get into" LigTel's core without authorization, and its internally inconsistent discovery responses, only reinforce the conclusion that Baicells has misappropriated LigTel's trade secrets and should be enjoined from continuing to do so.

Importantly, under each of the three legal theories LigTel advances, Baicells's actions are causing and will continue to cause LigTel to suffer irreparable harm absent an injunction. Baicells's actions cause other service providers to wrongly believe that LigTel is improperly interfering with their networks and failing to follow international and industry-imposed

telecommunications rules, which at a minimum irreparably harms LigTel's standing, reputation, and goodwill. Baicells's actions also cause immeasurable damage to the security and integrity of LigTel's network. And Baicells's actions create a serious and substantial risk that law enforcement will be unable to obtain critical information because law enforcement will be misled into believing that a suspect is a LigTel subscriber when he is not. In addition, Baicells's actions may cause LigTel's customers to question LigTel's ability to maintain and control its network and secure private information and communications.

LigTel has no adequate legal remedy for these harms absent an injunction. A preliminary injunction is warranted, balancing the equities and considering the public interest, because LigTel and the public may be seriously harmed if Baicells's bad acts go unchecked, while Baicells will suffer no undue prejudice if required to comply with federal and state law. The Court should therefore immediately enjoin Baicells's improper activity.

## BACKGROUND

**II.     HNI Codes Are Assigned To Carriers To Identify A Mobile Telephone User's Network**

Every mobile telephone in the United States has a unique fifteen-digit number, called an International Mobile Subscriber Identity ("IMSI"). Wentworth Ex. 1 ("IMSI Guidelines") §§ 3.5, 3.8; *see also* Mead Ex. 1. An IMSI is used in any mobile network that interconnects with other networks. Mead Ex. 1. The "unique, 15-digit international identifier, which is included in a mobile device, allows for roaming on mobile service provider networks." International Mobile Subscriber Identity (IMSI), iconectiv IMSI, https://imsiadmin.com/ (last visited April 3, 2020); *see* Mead Ex. 1. Each device's IMSI is stored in its Subscriber Identity Module (SIM), which is generally a

removable card found in the device.  *United States v. House*, 2015 WL 4111457, at *5 (W.D. Pa. July 8, 2015); *see* Wentworth Decl. ¶ 36.

An IMSI includes three components: (1) a three-digit Mobile Country Code (MCC); (2) a three-digit Mobile Network Code (MNC); and (3) a nine-digit Mobile Station Identification Number.  *Id.*  The first six digits of an IMSI are known as the HNI code and identifies the carrier to which that wireless customer subscribes; the remaining nine digits identify the particular device. IMSI Guidelines § 3.9; *see also In the Matter of Requests for Waiver of Various Petitioners to Allow the Establishment of 700 Mhz Interoperable Pub. Safety Wireless Broadband Networks*, 27 F.C.C. Rcd. 183, 183–84, ¶ 3 (2012).  All United States HNI codes are six digits, and only six-digits, and start with 310, 311, 312, 313, 314, 315, or 316.  Wentworth Decl. ¶¶ 2-3; *see* IMSI Guidelines § 3.9 (describing HNI code as "a fixed 6-digit length in the United States").

The IMSI Oversight Council ("IOC"), a committee of the Alliance for Telecommunications Industry Solutions (ATIS), governs the assignment and administration of HNI codes.  iconectiv acts as the US IMSI administrator managing HNI codes.  Mead Ex. 1.  ATIS prescribes a publicly-available process for applying for an HNI code.  IMSI Guidelines § 6.  HNI applicants and assignees must, among other things, pay annual fees, efficiently manage the HNI, and participate in IMSI audits.  *Id.* § 6.  An applicant that meets the applicable criteria is assigned an HNI code.   HNI Assignments, iconectiv IMSI, https://imsiadmin.com/assignments (last visited April 3, 2020); IMSI Guidelines § 3.11.

HNI codes serve many functions.  Most importantly, they identify the network to which a subscriber belongs.  Wentworth Decl. ¶ 6.  That allows other providers to identify the source of an interfering signal, to manage customers roaming on another provider's network, and to determine what (if any) roaming charges are required.  Wentworth Decl. ¶ 6.  HNI codes also allow law

enforcement officials to identify a suspect or target's service provider, so law enforcement knows which company to serve with legally authorized process for a search, seizure, or surveillance when necessary.  Wentworth Decl. ¶ 11; *see, e.g.*, *United States v. Oliva*, 705 F.3d 390, 400-01 (9th Cir. 2012); *ACLU v. Clapper*, 785 F.3d 787, 792, 796-97 (2d Cir. 2015) (noting the NSA collected IMSI numbers as part of its "bulk telephone metadata collection program" to aid "authorized investigations ... to protect against international terrorism").

Certain rules and standards govern the proper use of HNI codes.  Guidelines issued by the IMSI Oversight Council, for example, require HNI holders to assign, efficiently manage, and maintain up-to-date and accurate assignment records relating to their mobile terminals and users. IMSI Guidelines §§ 7.3.1, 7.3.2.  The 3rd Generation Partnership Project ("3GPP"), the international governing body responsible for mobile network standards, relies on HNI codes in defining how to authenticate users via roaming on another carrier's network.  Mead Decl. ¶ 10. Use of another company's HNI code is contrary to both the IMSI and 3GPP standards.  Mead Decl. ¶¶ 11, 29.

## III.   LigTel Obtains HNI Code 311980 And Deploys A Cutting-Edge Network Featuring A Huawei LTE Core

LigTel, founded as a subsidiary of Ligonier Telephone Company in April 1998, is a family-owned company that proudly serves approximately 1,500 wireless service customers across seven counties in northeastern Indiana.  Mead Decl. ¶ 2, Wentworth Decl. ¶ 1.

In 2001, LigTel applied for an HNI code and was assigned 311980.  Mead Decl. ¶ 6, Wentworth Decl. ¶ 12.  LigTel annually pays the maintenance fee and remains in good-standing with the HNI administrator.  Mead Decl. ¶ 6, Wentworth Decl. ¶ 12.

As part of its commitment to investing in cutting-edge infrastructure for its wireless service customers, in 2012 LigTel upgraded to an LTE network, which marked an approximately ten-fold

increase in speed over existing 3G networks.  Mead Decl. ¶ 8, Wentworth Decl. ¶ 13.  At that time, LigTel was the first and only company in North America to deploy an LTE core manufactured by Huawei, a global provider of telecommunications equipment.  Mead Decl. ¶¶ 8-9, Wentworth Decl. ¶¶ 13-16.

LigTel's LTE core is critical to the company's operations.  It is the brain of the network, controlling and coordinating user connections and ensuring high-speed connectivity for the entire mobile network.  Wentworth Decl. ¶¶ 5, 13.  Among many functions, the core authenticates network subscribers using IMSI numbers and HNI codes.  Wentworth Decl. ¶ 5.  Communications between the core and network subscribers are encrypted to prevent someone other than the sender and intended recipient of the communication from seeing the content.  Wentworth Decl. ¶ 17. Encryption also helps maintain the network's integrity, including by preventing non-subscribers from spoofing a connection to masquerade as a customer.  *See* Wentworth Decl. ¶ 17.

To facilitate LigTel's new LTE network deployment, LigTel and Huawei entered into non-disclosure agreements so that LigTel could safely share with Huawei proprietary and sensitive trade secrets related to LigTel's network.  Wentworth Decl. ¶ 13; *see id.* ¶¶ 16-18 (describing and illustrating trade secrets LigTel provided to Huawei).  LigTel requires companies to enter into these agreements before LigTel shares trade secrets, and the agreements are not the only measures LigTel takes to protect its confidential information.  *See* Wentworth Decl. ¶ 14; Mead Decl. ¶ 7. That is because someone with certain of LigTel's trade secrets would be able to decrypt communications between LigTel's subscribers and LigTel's network, access customer traffic with LigTel's network, and gain unauthorized access to LigTel's network.  Wentworth Decl. ¶ 17.

Ronald Mao was a Huawei employee who worked directly on LigTel's LTE network deployment.  Wentworth Decl. ¶ 18 & Wentworth Ex. 8.  Mao had access to LigTel's confidential

6

trade secrets, including LigTel's encryption code and network architecture (the proprietary layout of LigTel's equipment, core, and servers).  Wentworth Decl. ¶ 18 & Wentworth Ex. 8.

## IV.    Baicells, Founded By And Employing Former Huawei Personnel, Uses 31198 As Its HNI Code Despite Knowing HNI Codes Are Six Digits

Scott Xingang Liang and Yingzhe Ding were also employed at Huawei when LigTel's LTE core was designed and deployed.  *See* Wentworth Decl. ¶ 22.  Sometime after, they left Huawei and created Baicells, an equipment vendor that offers LTE service equipment and LTE core solutions to providers that are in the same business as LigTel.  *See* Wentworth Decl. ¶ 22.  Mao also left Huawei and went to work for Liang and Ding as a technical advisor at Baicells. Wentworth Decl. ¶ 18; Gillett Ex. 1 at 13481-82.  In seeking a job with Baicells, Mao specifically noted his prior work with LigTel.  Gillett Ex. 1 at 13481.

In late 2015, Baicells decided to use an HNI code of 31198.  Gillett Ex. 18 at Resp. 1. Baicells did not apply for or receive this HNI code from ATIS.  *See id.*  Contrary to the ATIS administrative process and guidelines, Baicells instead decided to self-assign a five-digit HNI code, despite recognizing that no other entity in the United States uses a five-digit HNI.  *Id.* at Resp. 6.  Baicells asserts that it chose 31198 after viewing the full list of assigned U.S. HNI codes, which included LigTel and its code of 311980.  *Id.* at Resp. 1.  Baicells has never sought authorization or permission from ATIS or LigTel to use this code.  *See id.*

Baicells began instructing its customers to use 31198 in June 2016.  *Id.* at Resp. 2.  Three months later, a customer wrote to Baicells expressing concern that the 31198 HNI code was "fictitious or belonging to another company," and may "cause some kind of confusion."  Gillett Ex. 2 at 8469.

7

**V.      Confused Carriers Lead LigTel to Discover That Baicells Is Using An HNI Code That Appears To Be LigTel's, But Baicells Refuses To Stop**

On June 21, 2019, Wentworth was contacted by an official at Viaero Wireless, a service provider in northeast Colorado, who reported possible interference caused by a carrier appearing to use LigTel's HNI code in Nebraska. Wentworth Decl. ¶ 19. This was shocking to Wentworth because LigTel has never done any business in either Colorado or Nebraska. Wentworth Decl. ¶ 19. After further investigation, Viaero reported that Sandhills Wireless LLC, a Nebraska provider, was "using [LigTel's] MCCMNC." Gillett Ex. 3 at 1519; *see also* Wentworth Decl. ¶ 20. Viaero informed LigTel that Sandhills was running Baicells equipment and "Baicells should not be telling clients to use your information." Gillett Ex. 3 at 1519. LigTel also determined that Baicells's public website and other communications directed to industry, customers, and potential customers—including online updates, technical documents, and other materials—featured the code 31198. *See, e.g.*, Wentworth Decl. ¶ 22; Mead Decl. ¶ 14; *compare* Gillett Decl. Ex. 20 (screenshots of Baicells's website listing 31198), *with* Dkt. 26 (Baicells reporting to the Court that 31198 has been removed from Baicells's website).

LigTel then took further action to protect its HNI code. It sent a cease and desist letter to Sandhills, and then agreed to grant Sandhills a license giving it limited rights to use LigTel's HNI code. Wentworth Decl. ¶¶ 24-25. LigTel also approached New Lisbon Broadband and Communications, an Indiana company that LigTel learned was using Baicells's equipment. Mead Decl. ¶¶ 13-14, Wentworth Decl. ¶ 26. LigTel learned that New Lisbon was also using the HNI code 31198 and, as a result, also appeared to be using LigTel's HNI code. Wentworth Decl. ¶ 26. When LigTel informed New Lisbon that New Lisbon was using a code that appeared to be LigTel's, New Lisbon confirmed that Baicells had directed it to do so and was not aware that Baicells lacked authorization to do so. Mead Decl. ¶ 13; Wentworth Decl. ¶ 26.

Meanwhile, LigTel acquired SIM cards from Baicells.  The first six digits in those SIM cards were 311980—LigTel's HNI code.  *See* Wentworth Decl. ¶ 21 & Ex. 11.  LigTel also learned that the SIM cards Baicells had issued to Sandhills started with 311980.  Wentworth Decl.  ¶ 24.

LigTel then reached out to Baicells directly and the parties met on July 29, 2019.  Mead Decl. ¶ 16; Wentworth ¶ 27.  On the Baicells side, the meeting was attended by Rick Harnish, Baicells Director of WISP Markets in North America; Bo Wei, North American President of Baicells; and Ronald Mao, the Baicells technical advisor who worked on LigTel's core when he was formerly employed at Huawei.  Wentworth ¶ 28; Mead Decl. ¶ 16.  The LigTel representatives included Randy Mead, LigTel's CEO and General Manager, Josh Wentworth, LigTel's Network Operations Supervisor, Mike Troup, LigTel's Network Operations Manager, and counsel for LigTel.   Mead Decl. ¶ 16.

At the meeting, Baicells acknowledged that it was using and directing its customers to use HNI code 31198.  Mead Decl. ¶ 18.  LigTel asked Baicells to stop using a code that appeared to be LigTel's and to migrate its customers to a different, formally assigned, HNI code.  Baicells appeared unwilling to do that—going so far as to claim that changing HNI codes would be logistically impossible.  Mead Decl. ¶ 18.  LigTel explained that a full and complete migration would require providing customers with new SIM cards with a new HNI code, dispatching technicians to each customer location, and possibly offering discounts to existing customers to compensate for the inconvenience.  Mead Decl. ¶ 18.  As a result, the cost for LigTel to migrate its customers to a new HNI code would be approximately $400,000, though it could be even higher. Mead Decl. ¶ 18.  Recognizing that the cost would be much higher for Baicells because its equipment provided service to tens of thousands of customers, Mead offered to transfer the HNI code to Baicells for a fee that would cover LigTel's costs and compensate LigTel.  Mead Decl. ¶

20. Baicells refused. Mead Decl. ¶ 19. Baicells offered to acquire LigTel's HNI code and to grant LigTel a right to use that number. Mead Decl. ¶ 20. Neither of Baicells's offers, however, would have fully alleviated the harm to LigTel or avoided future risk and confusion. Mead Decl. ¶ 27; *see* Wentworth Decl. ¶¶ 36-38 (describing elements of a full and complete migration).

Wei then asked to speak to Mead alone and Mead agreed. Mead Decl. ¶ 21. Wei offered that Baicells would pay LigTel $100,000 to obtain LigTel's HNI code, and then Baicells would grant LigTel a secondary use license to use its own HNI code. Mead Decl. ¶ 21. Mead again explained to Wei that LigTel could not agree to a deal in which both companies used the same HNI code, because then the confusion that led to LigTel's discovery of the problem—the risk that other carriers would misidentify the signal—would still remain. Mead Decl. ¶ 21; *see* Wentworth Decl. ¶¶ 36-38 (describing elements of a full and complete migration).

Wei then stated that he knew that Huawei had manufactured and configured LigTel's core—even though Mead had never shared that information—and asked if Mead knew that Mao had formerly worked at Huawei. Mead Decl. ¶ 22. Wei then offered to have Mao "get into" LigTel's Huawei-manufactured core and reprogram it himself. Mead Decl. ¶ 22. Mead understood this offer to mean that Baicells had the ability to access LigTel's network and that Baicells had acquired LigTel's trade secrets (including its encryption code and network architecture) related to its core. Mead Decl. ¶ 23. After Wei offered to give LigTel discounts on Baicells equipment, Mead told Wei that he did not feel comfortable discussing such a proposal and went back to join the larger meeting. Mead Decl. ¶ 24. Since that meeting, Baicells has not agreed to return LigTel's trade secrets or to not use those secrets. Mead Decl. ¶ 25.

**VI.    LigTel Seeks Relief From ATIS, Which Finds That Baicells Is Improperly Using LigTel's HNI Code But Is Unable To Remedy LigTel's Irreparable Harm**

Having failed to resolve the HNI Code issue with Baicells, LigTel sought relief through the voluntary dispute-resolution process offered by ATIS.  *See* IMSI Guidelines §§ 12.0, B-4.3. As part of that process, ATIS agreed that Baicells was misusing LigTel's HNI Code—telling Baicells that it was "using an HNI that is assigned to another company"—and that Baicells should migrate to its own HNI code.  *See* Gillett Decl. Ex 10 at 8180.

After Baicells applied for and received its own HNI code (314030) from ATIS, Baicells eventually submitted a proposed plan to migrate its customers to that code.   Gillett Ex. 4; Wentworth Decl. ¶ 34; *see* Mead Decl.  ¶ 29.  Baicells's plan adopts the procedure that still uses LigTel's HNI code and does not include replacing SIM cards of existing subscribers that use LigTel's HNI code.  *See* Gillett Ex. 5 at 62557-58.  Baicells's plan also does not resolve concerns about erroneous roaming charges or about law enforcement mistakenly relying on the HNI code to identify individuals as LigTel subscribers when they are not.  *See* Wentworth Decl. ¶¶ 36-38 (describing elements of a full and complete migration).  Baicells's plan also includes an estimated completion date, but Baicells has not committed to completing migration by that date.  *See* Gillett Ex. 6 at 7936; Gillett Ex. 19 at 8078-79 (declining to provide ATIS with a specific date when requested).  Baicells apparently believes that the migration is "nothing related to LigTel."  *See* Gillett Ex. 7 at 8422.  As of March 24, 2020 Baicells had migrated approximately 20% of its customers and less than 1% of its customers' underlying users.  *See* Gillett Ex. 18 at Resp. 11.  *But see* Dkt. 34, Feb. 18, 2020 Hr'g Tr. at 12:19-24 (representing that migration was roughly half complete).

## STANDARD OF REVIEW

LigTel is entitled to a preliminary injunction because it (1) will suffer irreparable harm absent an injunction, (2) has no adequate remedy at law, and (3) is likely to succeed on the merits. *See Valencia v. City of Springfield*, 883 F.3d 959, 965-66 (7th Cir. 2018). A preliminary injunction is also warranted because the irreparable harm LigTel would suffer from Baicells's improper actions exceeds any irreparable harm Baicells would suffer if its actions were enjoined, and the public interest favors issuing an injunction. *See id.* Because the balance of harm favors LigTel, under the Seventh Circuit's sliding-scale approach LigTel's burden to show likelihood of success—which "is a low threshold" that does not require LigTel to "demonstrate a likelihood of absolute success" in any event—is even lighter. *Id.* Indeed, LigTel need only show that its "chances to succeed on [its] claims are 'better than negligible.'" *Id.* (citation omitted).

## ARGUMENT

I.    **Absent A Preliminary Injunction, LigTel Will Continue To Suffer Irreparable Harm For Which It Has No Adequate Legal Remedy**

LigTel will continue to suffer irreparable harm absent an injunction. In the Seventh Circuit, "it is well settled that injuries arising from Lanham Act violations are presumed to be irreparable." *Promatek Indus., Inc. v. Equitrac Corp.*, 300 F.3d 808, 813 (7th Cir. 2002). A trade secret violation, too, "constitute[s] irreparable harm for which no adequate remedy at law exists." *HCAFranchise Corp. v. Alisch*, 2016 WL 10706285, at *5 (N.D. Ind. Aug. 12, 2016). Accordingly, LigTel's complaint establishes irreparable injury on its face.

Additionally, many courts have held that harm to a company's reputation or lost goodwill is irreparable. *See, e.g.*, *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S. of Am., Inc.*, 549 F.3d 1079, 1089 (7th Cir. 2008) (collecting cases); *Integrity Trade Servs., Inc. v. Integrity Employment Partners, LLC*, 2015 WL 10934322, at *2 (N.D. Ind. May 20, 2015). That is exactly

the harm that LigTel is suffering here.  By making the networks of Baicells's customers appear as LigTel's network, Baicells causes other providers to blame LigTel for any interference.  *See* Wentworth Decl. ¶¶ 19, 38, 41.  Baicells also makes it appear that LigTel does not comply with international and industry-imposed rules, and creates an impression that LigTel cannot properly manage its network.  Wentworth Decl. ¶¶ 38, 41.  That tarnishes LigTel's reputation in the industry, leading other providers to treat LigTel less favorably, which may ultimately frustrate LigTel's ability to serve its customers.  Wentworth Decl. ¶¶ 41-42.  Baicells's use of an HNI code that appears to be LigTel's, and Baicells's misappropriation of LigTel's trade secrets also threatens LigTel's reputation with customers, who could interpret Baicells's actions as showing that LigTel cannot control its network or protect its customers' personal information and confidential communications.  Wentworth Decl. ¶¶ 41-42; *see United States v. Hanjuan Jin*, 733 F.3d 718, 722 (7th Cir. 2013) (noting theft of trade secrets can injury a company "by revealing that it couldn't keep secrets or prevent rivals from stealing its technology").  Moreover, Baicells's use of an HIN code that appears to be LigTel's may cause law enforcement to seek information from LigTel about individuals who appear to be LigTel subscribers, when in fact they are not.  *See* Wentworth Decl. ¶ 36; Mead Decl. ¶¶ 26, 32.  That harms LigTel's reputation with law enforcement and also creates serious public safety risks.  *See* Mead Decl. ¶¶ 21, 32.

LigTel has no adequate legal remedy for these irreparable injuries because they cannot be fully quantified.  *See Ram Prod. Co. v. Chauncey*, 967 F. Supp. 1071, 1085 (N.D. Ind. 1997) (describing "loss of customer goodwill" as "irreparable injury because the damages flowing from such losses are difficult to compute."); *Lincoln Chem. Corp. v. DuBois Chemicals, Inc.*, 2012 WL 6553098, at *7 (N.D. Ind. Dec. 13, 2012) (explaining that damages could not "be reasonably calculated for any misuse of trade secrets").  Indeed, "it is virtually impossible to ascertain the

13

precise economic consequences of intangible harms, such as damage to reputation and loss of goodwill." *Ty, Inc. v. Jones Group, Inc.*, 237 F.3d 891, 902 (7th Cir. 2001).

LigTel therefore has more than met its burden to show that it will suffer irreparable harm absent an injunction and has no adequate remedy at law.

## II.      LigTel Is Likely To Succeed On The Merits

LigTel has cleared the "low threshold" to show that it is likely to succeed on the merits of its claims. *See Valencia*, 883 F.3d at 965-66. The record reflects that Baicells has violated the federal Lanham Act and Indiana unfair competition law by causing its equipment to emit a signal that appears to be LigTel's, by misrepresenting 31198 as a valid and authorized HNI code, and by using a code that appears to be LigTel's. The record also reflects that Baicells has violated federal trade secrets law and the Indiana Uniform Trade Secrets Act by misappropriating LigTel's confidential trade secrets.

### A.      Baicells's Use Of 31198 Violates The Federal Lanham Act And Indiana Unfair Competition Law

Congress enacted the Lanham Act with the "broad legislative purpose" to "prevent unfair competition, and protect against fraud" via false advertising that "is likely to cause confusion." *Eli Lilly & Co. v. Nat. Answers, Inc.*, 233 F.3d 456, 461 (7th Cir. 2000). Relevant here, the statute bars the use in commerce of "any word, term, [or] name" that constitutes a "false designation of origin, false or misleading description of fact, or false or misleading representation of fact" that "is likely to cause confusion … or to deceive." 15 U.S.C. § 1125(a). Baicells's use of 31198, which appears to the world to be LigTel's HNI code, runs afoul of that prohibition in two distinct

ways—by "passing off" Baicells's signal as LigTel's, and by falsely representing that 31198 is a

valid HNI code and that Baicells is authorized to use it without LigTel's permission.[1]

       1.    **Baicells's use of 31198 is a "false designation of origin" under the Lanham Act because it passes off Baicells's signal as LigTel's**

Baicells violates the Lanham Act's "false designation of origin" provision because its use

of 31198 makes Baicells's equipment emit a signal that wrongly appears to be from LigTel.  That

type of claim, known as "passing off" or "palming off," requires showing that (1) the defendant

used a false designation of origin in connection with its goods or services, (2) the defendant put

those goods or services into interstate commerce, and (3) the false designation of origin is likely

to cause confusion.  *See VitalGo, Inc. v. Kreg Therapeutics, Inc.*, 370 F. Supp. 3d 873, 889 (N.D.

Ill. 2019) (citing *Web Printing Controls Co., Inc. v. Oxy-Dry Corp.*, 906 F.2d 1202, 1204 (7th Cir.

1990)); *Heartland Recreational Vehicles, LLC v. Forest River, Inc.*, 2009 WL 418079, at *4 (N.D.

Ind. Feb. 18, 2009).  LigTel is likely to succeed on all three elements.

     *First*, Baicells's use of code 31198 is falsely designating the signal from its equipment to

appear as though the signal were LigTel's.  ATIS has recognized that 31198 is LigTel's assigned

HNI code.  *See* Gillett Ex. 11 at 8431; Gillett Ex. 10 at 8180.  Because all HNI codes in the United

States are six digits—and always have been—when American operators attempt to read the five-

digit code Baicells provides, they understand 31198 as 311980—LigTel's HNI Code.  Wentworth

Decl. ¶ 7.  The result: the signal coming from Baicells's equipment makes it appear that LigTel is

the provider even though LigTel is not.  *See* Wentworth ¶¶ 19-21 (explaining Viaero believed

---

[1] LigTel's HNI Code is a protectable mark for purposes of the Lanham Act because LigTel uses it in connection with its business and LigTel is publicly identified with and distinguished be that code.  *Johnny Blastoff, Inc. v. Los Angeles Rams Football Co.*, 188 F.3d 427, 433-34 (7th Cir. 1999); HNI Assignments, iconectiv IMSI, https://imsiadmin.com/assignments (last visited April 3, 2020); Gillett Decl. Ex 10 at 8180 (email from ATIS explaining that the code Baicells uses "is assigned" to LigTel); *see also* 15 U.S.C. § 1127 (defining "trademark" and "service mark" as something "to identify and distinguish" an entity's goods or services from those of "others and to indicate the source" of the goods or services "even if that source is unknown").

LigTel was causing interference from Nebraska, where LigTel does not operate, based on the HNI code).  That is improper "palming off" in violation of the Lanham Act.

*Second*, Baicells sells its equipment in interstate commerce (Dkt. 29 (Baicells's Answer) ¶ 79), and the signal coming from Baicells's equipment is part of interstate commerce.  *See* Wentworth Ex. 10 (Baicells signal in Nebraska causing interference in Colorado).

*Third*, Baicells's use of 31198 is causing and is likely to continue to cause confusion.  To determine the likelihood of confusion, the court considers seven factors:  "(1) the similarity between the marks in appearance and suggestion, (2) the similarity of the products, (3) the area and manner of concurrent use of the products, (4) the degree of care likely to be exercised by consumers, (5) the strength of the complainant's mark, (6) any evidence of actual confusion, and (7) the defendant's intent (or lack thereof) to palm off its product as that of another."  *Eli Lilly*, 233 F.3d at 461-62.  Although the "proper weight given to each [factor] will vary from case to case … the similarity of the marks, the intent of the defendant, and evidence of actual confusion are the most important."  *Id.* (internal quotation marks and citations omitted).  Those key factors all favor LigTel.

> *LigTel's HNI Code (311980) and the code that Baicells uses (31198) appear to the world to be identical.*  On their face, the LigTel and Baicells codes are very similar.  In the context of HNI codes, they are identical.  Baicells's own officials admit that Baicells's supposed code is "invalid" and "the same as LigTel's PLMN '311980,'" Gillett Ex. 8 at 8105, and Baicells has issued more than 60,000 SIM cards whose first six digits are 311980, Gillett Ex. 9 at 7869.  Even the entity that administers HNI codes has told Baicells that it is "using an HNI that is assigned to another company."  Gillett Decl. Ex 10 at 81 80; *see also* Gillett Ex. 11 at 8431 (concluding Baicells's migration plan "is necessary because HNI 311-98 code has been assigned in the US to

16

another party (Ligtel)").   Customers and providers have also similarly expressed the view that 31198 and 311980 are the same.  *See* Gillett Ex. 2; Gillett Ex. 3 ("Baicells should not be telling clients to use your information.   Sandhills should shut down until they have their own MCCMNC.").   That is because all U.S. HNI codes are six digits, almost all end in zero, and the sixth digit of all of Baicells's IMSI numbers is also zero—so operators and their equipment register the sixth digit, zero, at the end of Baicells's supposed code, making it LigTel's.  *See* Wentworth Decl. ¶ 21.   In addition, none of the more than 60,000 pages of documents Baicells produced contains an IMSI that begins with 31198 and ends with a sixth digit other than zero.[2]

> *Baicells intentionally used 31198 despite knowing it was invalid and spoofed LigTel's HNI code.*  Baicells's knowingly adopted a five-digit HNI code when all codes in the United States are six digits.  Gillett Ex. 15; *see* Gillett Ex. 9 at 7871.  Baicells also continued using 31198—and said it would not stop doing so—after LigTel and others told Baicells that its actions were causing harm.   Mead Decl. ¶ 26; Wentworth Decl. ¶ 39.   Baicells has not committed to completing migration by a particular date (*see* Gillett Ex. 6 at 7936), and thus far Baicells has migrated only approximately 20% of its customers and less than 1% of its customers' underlying users (*see* Gillett Ex. 18 at Resp. 11).   In fact, Baicells's website continued instructing customers to use 31198 until this Court intervened.  *Compare* Dkt. 34, Feb. 18, 2020 Hr'g Tr. at 11-15, *with* Dkt. 26 (reporting that 31198 has been removed from Baicells's website).

---

[2] Baicells may contend that 311980 and 31198 are distinct in the technical programming language used by the equipment.  But that distinction stands in contrast to the statements from ATIS and others recognizing that 31198 and 311980 are the same.  The distinction also makes no difference under the Lanham Act.  The "inquiry in comparing" the codes and resulting signals is not "whether they are interchangeable," but whether they "are the kind the public might very well attribute to a single source (the plaintiff).'" *Eli Lilly*, 233 F.3d at 463 (citation omitted); *see also Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1088 (7th Cir. 1988) (noting that slight variations between marks "is of little significance" and that marks "must be compared in light of what occurs in the marketplace").

_Baicells's use of 31198 has caused actual confusion._   The incident with Viaero—which contacted LigTel because it thought, based on the HNI code, that LigTel was the source of an interfering signal emitted from Baicells equipment—is alone enough to tip this factor to LigTel. _See Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc._, 846 F.2d 1079, 1090-91 (7th Cir. 1988) (crediting inquiries from third parties that reflected confusion).   But the record contains more. Baicells acknowledged internally that its use of 31198 "may create[] confusion," Gillett Ex. 12 at 8419, and told the HNI administrator that it would obtain its own HNI code to "avoid confusion." Gillett Ex. 10 at 8178.   A Baicells customer expressed concern that the 31198 code was "fictitious or belonging to another company," and would "cause some kind of confusion."   Gillett Ex. 2; _see also_ Gillett Ex. 14 at 7845.   And because law enforcement may use HNI codes in determining the service provider to serve with a warrant or subpoena, they may mistakenly believe that a subscriber is a LigTel customer when he actually is not.   Wentworth Decl. ¶¶ 11, 36.

The other relevant "likelihood of confusion" factors favor LigTel as well.   Baicells is improperly broadcasting a signal using 31198 concurrently with LigTel properly broadcasting a signal using 311980, and the Viaero incident illustrates that Baicells can cause confusion in any area even if LigTel is not operating there.   _See_ Wentworth Decl. ¶¶ 19-20.   LigTel's mark is also strong and unique—no other service provider uses 311980 without LigTel's permission.   IMSI Guidelines § 6; _see_ Gillett Ex. 11 at 8431 (IOC presentation explaining that "HNI 311-98 code has been assigned in the US to another party (Ligtel)"); Gillett Ex. 10 at 8180 (IMSI administrator stating that Baicells "is currently using an HNI that is assigned to another company"); Wentworth Ex. 10 at 1519 (Viaero telling LigTel that Sandhills used "your MCCMNC"); Wentworth Decl. ¶ 9.  Regardless of the sophistication of the communications operators and law enforcement officials

18

who may engage with HNI codes, they are likely to be confused for the reasons identified above—just as Viaero was.

At bottom, Baicells's improper use of 31198 is likely to cause confusion with LigTel's valid HNI Code 311980.[3]  Because LigTel is also likely to satisfy the other elements of a false designation of origin claim under the Lanham Act, based on a "passing off" theory, a preliminary injunction is warranted.  *See Eli Lilly*, 233 F.3d at 465-66.

## 2. **Baicells's use of 31198 is a false or misleading representation under the Lanham Act**

Baicells also violates the Lanham Act by wrongly implying that 31198 is a valid HNI code, and that Baicells is authorized to use 31198 without LigTel's permission.  A Lanham Act misrepresentation claim requires showing that the defendant made a statement (1) that is false or misleading, (2) on a subject material to the decision to purchase the goods, (3) involving interstate commerce, (4) and that causes actual or probable injury.  *B. Sanfield, Inc. v. Finlay Fine Jewelry Corp.*, 168 F.3d 967, 971 (7th Cir. 1999).  If the statement is misleading, as opposed to false, LigTel must also show that the statement actually deceives or is likely to deceive a substantial segment of the statement's audience.  *Id.*  LigTel is likely to satisfy each of these elements.

*First*, Baicells's use of 31198 qualifies as a false or misleading statement for purposes of the Lanham Act.  Consistent with the statute's broad aim, courts take a generous view of the statements that are actionable under the Lanham Act.  For example, courts have found the Lanham Act applies to misrepresentations on websites directed at industry professionals and potential customers and to statements to third-parties who might disseminate the statement to potential

---

[3] Baicells's discovery responses suggest it may argue confusion is unlikely because LigTel is not a customer or competitor of Baicells.  Gillett Ex. 18 at Resp. 16.  However, "a plaintiff need not demonstrate that it is in direct competition with an alleged infringer in order to establish likelihood of confusion."  *Int'l Kennel Club*, 846 F.2d at 1089 (gathering cases).

19

purchasers. *See, e.g.*, *Data Research & Handling, Inc. v. Vongphachanh*, 278 F. Supp. 3d 1066, 1078 (N.D. Ind. 2017); *Williams Elecs., Inc. v. Bally Mfg. Corp.*, 568 F. Supp. 1274, 1282 n.24 (N.D. Ill. 1983).

Baicells's repeated representations that its HNI code is 31198 are false—or at the very least, misleading. Baicells publishes 31198 on its public website and in communications to actual and potential customers as well as service providers, and instructs customers to use that code with Baicells's equipment. Wentworth Decl. ¶ 22. In doing so, it represents that this is a valid HNI, meaning one issued by the IMSI administrator. This is false. Even if the Court considers this statement literally true, it is misleading because participants in the marketplace understand 31198 as 311980, and Baicells is not authorized to use LigTel's HNI code. *See* Wentworth Decl. ¶ 21. The evidence supporting that conclusion is so powerful it bears repeating:

- Baicells has been told by the entity that administers HNI codes that "HNI 311-98 code has been assigned in the US to another party (Ligtel)" (Gillett Ex. 11 at 8431) and stated that Baicells "is currently using an HNI that is assigned to another company" (Gillett Ex. 10 at 8180).

- Baicells's own officials admit that Baicells's supposed code is "invalid," did "not belong to Baicells" and is "the same as LigTel's PLMN '311980'" (Gillett Ex. 8 at 8105); and

- Baicells has issued more than 60,000 SIM cards that begin with 311980 (Gillett Ex. 9 at 7869).

*Second*, Baicells's statements have actually deceived providers and customers, and are likely to deceive others. Both Sandhills and New Lisbon believed 31198 to be 311980, and expressed surprise that the code was assigned to LigTel and that Baicells was not authorized to use it. Wentworth Decl. ¶ 23; Mead Decl. ¶ 13. Viaero and ATIS similarly recognized that Baicells's use of 31198 made it appear as though the signal from Baicells's equipment was actually coming from LigTel. And Baicells has repeatedly acknowledged that its use of 31198 causes confusion.

*Third*, Baicells's misleading suggestion that it is authorized to use 31198 is material to customers' purchasing decisions. No reasonable customer would purchase or use Baicells's equipment if it knew that the equipment was programmed to use an invalid HNI code—much less one that appeared to be assigned to another company that had not authorized use of its code. Indeed, shortly after Baicells began instructing customers to use 31198, one expressed concern that 31198 could be "fictitious or belonging to another company." Gillett Ex. 2 at 8469; *see* Gillett Ex. 18 at Resp. 2 (explaining that Baicells began instructing customers to use 31198 in June 2016). Sandhills similarly expressed concern upon learning that Baicells's equipment was programmed to use LigTel's HNI code without authorization, *see* Gillett Ex. 16 at 4741 (telling Baicells the issue "obviously needs to be addressed"), and later entered into a license agreement authorizing it to use LigTel's HNI code, *see* Gillett Ex. 17 at 1384.

*Finally*, as discussed above, Baicells's misleading use of 31198 occurs as part of interstate commerce and causes harm to LigTel. Baicells's material misrepresentations about its authority to use 31198 therefore satisfy the elements of false or misleading representation under the Lanham Act.

       3.      **Baicells' actions violate the Indiana common law prohibition on unfair competition.**

In addition to violating the federal Lanham Act, Baicells's misconduct violates Indiana's common law prohibition on unfair competition. An unfair competition claim under Indiana law tracks the elements of the Lanham Act. *See Dwyer Instruments, Inc. v. Sensocon, Inc.*, 873 F. Supp. 2d 1015, 1040 (N.D. Ind. 2012). Thus, for the reasons discussed above, Baicells's use of 31198 and unauthorized use of LigTel's HNI code violates Indiana's unfair competition law.

**B.      Baicells Has Misappropriated LigTel's Trade Secrets, In Violation Of Federal Law And Indiana Law**

Baicells has likewise violated federal and Indiana law that prohibits the misappropriation of LigTel's trade secrets.  There is no legitimate dispute that the trade secrets at issue are entitled to protection.  LigTel's encryption code, network architecture, and network engineering are confidential, proprietary, and valuable pieces of information that are critical to LigTel's business. *See* Mead Decl. ¶ 8-9, Mead Exs. 8, 11; 18 U.S.C. § 1839(3) (defining trade secrets to include "plans," "designs," "methods," "programs," and "codes"); Ind. Code. § 24-2-3-2 (similarly defining trade secrets under Indiana law); *see, e.g., United States v. Lange*, 312 F.3d 263, 269 (7th Cir. 2002) (describing trade secrets consisting of "completed specifications and engineering diagrams").  LigTel has taken reasonable measures to protect those secrets via nondisclosure agreements and internal confidentiality policies.  Mead Decl. ¶ 7; Mead Exs. 6-8, 11; *see, e.g, Signal Fin. Holdings LLC v. Looking Glass Fin. LLC,* 2018 WL 636769, at *4-5 (N.D. Ill. Jan. 31, 2018) (determining slide deck marked confidential and covered by NDA warranted federal trade secret protection and granting preliminary injunction).

Yet Baicells appears to have misappropriated those trade secrets by acquiring them without authorization.  18 U.S.C. § 1836(b)(1); *id.* § 1839(5); Ind. Code § 24-2-3-2.  The evidence shows that LigTel shared its trade secrets with Huawei (subject to a non-disclosure agreement) as part of its deployment of the first LTE network in the United States.  Wentworth Decl. ¶ 16.  Shortly thereafter, two Huawei employees founded Baicells and began selling LTE equipment and services in the United States.  Wentworth Decl. ¶ 22.  Then Baicells hired Ronald Mao as its technical advisor after he touted his work at Huawei on the deployment of LigTel's LTE core.  Gillett Ex. 1 at 13481-82 (translated).  The fair inference from this chain of events is that Baicells acquired LigTel's trade secrets along the way.

22

Baicells's decision to use 31198 as its HNI code strongly supports that inference.  Baicells admits that it reviewed "the full list of assigned PLMN numbers in the United States," all of which are six digits.  Gillett Ex. 18 at Resp. 1.  Nevertheless, Baicells chose to assign itself a five-digit code—31198—that begins with the same five digits as LigTel's HNI Code.  *See* Gillett Ex. 15 at 62625-31.  The odds that happened by chance are infinitesimal.  Baicells had millions of numbers to choose from, including tens of thousands of five-digit numbers.  Even if Baicells had limited itself to using a three-digit MCC code used in the United States, Baicells still would have had hundreds of combinations to choose from.  Baicells must have had a very good reason to select 31198 among all those different options Baicells must have had a very good reason to select 31198, and the most logical reason is that Baicells had misappropriated LigTel's trade secrets.

Baicells's discovery responses only amplify the questionable circumstances around its selection of 31198.  Baicells claims that before LigTel approached Baicells in July 2019, "Baicells was unaware that the five-digit PLMN number selected by Baicells engineers was similar to a six-digit PLMN in use by another operator."  Gillett Ex. 18 at Resp. 6.  Baicells also claims that it "determin[ed] that the full list of assigned PLMN numbers in the United States contained no five-digit numbers" when selecting 31198.  Gillett Ex. 18 at Resp. 1.  But the only way for Baicells to "determine" this fact was for it to review the list of assigned HNI numbers—meaning Baicells necessarily would have been aware that LigTel's HNI code was 311980 when it self-selected 31198 as its own "code."  Baicells does not appear to have considered changing course even after customers wondered whether adopting a five-digit code that was "fictitious or belonging to another company" would cause trouble, *see* Gillett Ex. 2 at 8469, and Baicells recognized that its "code" was not registered as required, *see* Gillett Ex. 13 at 34212.

Baicells's suggestion that it could access LigTel's core and network without authorization further reinforces the conclusion that Baicells has misappropriated LigTel's trade secrets.  At the meeting in July, Baicells's Bo Wei mentioned that Ronald Mao had previously worked at Huawei and offered to have him "get into" LigTel's LTE core and reprogram it without involving Huawei Mead Decl. ¶ 22.  Mead understood Wei's statement as saying that Baicells had acquired LigTel's trade secrets and was showing LigTel that Baicells had the ability to reprogram LigTel's core— thus showing access to LigTel's trade secrets.  Mead Decl. ¶ 23.  That alone is strong evidence that an injunction is appropriate here.  *HCAFranchise Corp.*, 2016 WL 10706285, at *7 ("This court can grant an injunction to prevent any actual or threatened misappropriation."); *see also* 18 U.S.C. § 1836(b)(3)(A)(i).   And taken alongside the other evidence that Baicells has misappropriated LigTel's trade secrets, the record shows that LigTel is likely to succeed on its trade secrets claims.

### III.    The Balance of Equities And Public Interest Favor A Preliminary Injunction

LigTel can also show the balance of equities favors an injunction and that an injunction is in the public interest.  *See Valencia*, 883 F.3d at 965-66.  As for balancing, LigTel demonstrated above that it is suffering and will continue to suffer irreparable harm to its business reputation and goodwill without a preliminary injunction.  Baicells, on the other hand, will suffer no such harm if its improper conduct is enjoined.  Baicells now has its own HNI code, so it can reprogram its equipment and migrate customer networks to use that code without interrupting its business.  Indeed, Baicells claims to be doing so now, albeit slowly, incompletely, and insufficiently.  *See* Wentworth Decl. ¶ 36 (explaining why Baicells's efforts to "mask" the HNI code being used does not resolve the risks LigTel faces).  The one-time, calculable costs of Baicells complying with

applicable rules are not only the direct result of Baicells's violation of LigTel's rights, but also starkly contrast with the irreparable harm to which Baicells has subjected LigTel.

An injunction barring Baicells from continuing to use LigTel's HNI code and misappropriating LigTel's trade secrets is also in the public interest.  Such an injunction would clear up existing confusion in the marketplace and prevent future confusion.  *See Promatek Indus.*, 300 F.3d at 813–14.  It would also ensure that any network interference caused by Baicells equipment, or roaming charges incurred by Baicells customers, could be promptly resolved— benefitting both market participants and customers who would be impacted by the interference.  Finally, an injunction mitigates serious risks to public safety caused by network interference, by law enforcement's confusion about which carrier holds relevant information about particular suspects and investigation targets, and by any potential intrusion into LigTel's network as a result of misappropriation of LigTel's trade secrets.

In contrast, there is no countervailing public interest that supports allowing Baicells to continue to use LigTel's HNI code and to misappropriate LigTel's trade secrets.  So there is no reason to deny an injunction and allow Baicells to continue engaging in its harmful conduct.

## CONCLUSION

Baicells's actions are causing and will cause irreparable harm to LigTel's reputation and goodwill, as well as continue to endanger network integrity and public safety.  In addition, LigTel is likely to prevail on the merits of its federal and state law claims for unfair competition and misappropriation of trade secrets, and the balance of equities and public interest support enjoining Baicells's continuing use of LigTel's HNI code and Baicells's misappropriation of LigTel's trade secrets.  Therefore, this Court should grant LigTel's motion for a preliminary injunction.

Dated:  April 3, 2020                              Respectfully submitted,

                                                   */s/ Gabriel K. Gillett*

                                                   Samuel L. Feder (admitted *pro hac vice*)
                                                   Jenner & Block LLP
                                                   1099 New York Avenue, NW, Suite 900
                                                   Washington, DC 20001
                                                   (202) 639-6000

                                                   Michael J. Nelson
                                                   Gabriel K. Gillett (admitted *pro hac vice*)
                                                   Leigh J. Jahnig (admitted *pro hac vice*)
                                                   Jenner & Block LLP
                                                   353 N. Clark Street
                                                   Chicago, IL 60654
                                                   (312) 222-9350

                                                   Michael L Schultz
                                                   Parr Richey Frandsen Patterson Kruse LLP
                                                   251 N Illinois Street, Suite 1800
                                                   Indianapolis, IN 46204
                                                   (317) 269-2500

                                                   *Attorneys for Plaintiff*
                                                   *LigTel Communications, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on April 3, 2020, I caused the foregoing document, along with the accompanying declarations and exhibits, to be filed electronically with the Clerk of the Court using the CM/ECF system, which sent a notification to all counsel of record.


DATED: April 3, 2020

*/s/ Gabriel K. Gillett*

27