## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA

LIGTEL COMMUNICATIONS, INC.,

                          Plaintiff,

          v.

BAICELLS TECHNOLOGIES INC.;
BAICELLS TECHNOLOGIES NORTH AMERICA
INC.,

                          Defendants.

Case No. 1:20-cv-00037-HAB-SLC

## PRE-HEARING RESPONSE MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ..........................................................................................................................1

ARGUMENT ..............................................................................................................................2

I.     LigTel Is Likely To Succeed On The Merits ....................................................................3

        A.     Baicells's Use Of 31198 Violates The Federal Lanham Act And Indiana
              Unfair Competition Law ............................................................................................3

              1.     LigTel has shown a likelihood that Baicells's use of 31198 actually
                     is the same as LigTel's HNI code ................................................................4

              2.     LigTel has shown a likelihood that Baicells's use of 31198 causes
                     confusion that is actionable under the Lanham Act.....................................6

              3.     LigTel's HNI code is a protectable mark under the Lanham Act..............10

        B.     Baicells Has Misappropriated LigTel's Trade Secrets In Violation Of
              Federal And State Law.............................................................................................11

II.    Absent A Preliminary Injunction, LigTel Will Continue To Suffer Irreparable
        Harm For Which It Has No Adequate Legal Remedy .......................................................14

III.   The Balance of Equities And Public Interest Favor A Preliminary Injunction .................19

CONCLUSION..........................................................................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Abbott Labs. v. Mead Johnson & Co.*,
  971 F.2d 6 (7th Cir. 1992) ............................................................................14, 18

*Advanced Fluid Sys., Inc. v. Huber*,
  28 F. Supp. 3d 306 (M.D. Pa. 2014) .........................................................................9

*AECOM Energy & Constr., Inc. v. Ripley*,
  348 F. Supp. 3d 1038 (C.D. Cal. 2018) .....................................................................9

*B. Sanfield, Inc. v. Finlay Fine Jewelry Corp.*,
  168 F.3d 967 (7th Cir. 1999) ....................................................................................3

*Badger Daylighting Corp. v. Palmer*,
  2019 WL 4572798 (S.D. Ind. Sept. 20, 2019) .......................................................19

*Bd. of Regents of Univ. of Wisc. Sys. v. Phoenix Int'l Software, Inc.*,
  653 F.3d 448 (7th Cir. 2011) ....................................................................................9

*BioConvergence LLC v. Attariwala*,
  2019 WL 6893704 (S.D. Ind. Dec. 18, 2019)................................................17, 19

*CAE, Inc. v. Clean Air Eng'g, Inc.*,
  267 F.3d 660 (7th Cir. 2001) ....................................................................................9

*Chere Amie v. Windstar Apparel Corp.*,
  2002 WL 460065 (S.D.N.Y. Mar. 26, 2002) ..........................................................10

*Computer Care v. Service System Enters., Inc.*,
  982 F.2d 1063 (7th Cir. 1992) ..................................................................................8

*EEOC v. Sanchez*,
  2010 WL 11452034 (E.D. Wash. Nov. 30, 2010) ...................................................13

*Eli Lilly & Co. v. Nat. Answers, Inc.*,
  233 F.3d 456 (7th Cir. 2000) ....................................................................................7

*Enigma Software Grp. USA, LLC v. Bleeping Computer LLC*,
  194 F. Supp. 3d 263 (S.D.N.Y. 2016)........................................................................9

*Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S. of Am., Inc.*,
  549 F.3d 1079 (7th Cir. 2008) ................................................................................18

*HCAFranchise Corp. v. Alisch*,
2016 WL 10706285 (N.D. Ind. Aug. 12, 2016)............................................................14, 18

*Heartland Recreational Vehicles, LLC v. Forest River, Inc.*,
2009 WL 418079 (N.D. Ind. Feb. 18, 2009).........................................................................3

*Integrity Trade Servs., Inc. v. Integrity Employment Partners, LLC*,
2015 WL 10934322 .............................................................................................................14

*Johnny Blastoff, Inc. v. Los Angeles Rams Football Co.*,
188 F.3d 427 (7th Cir. 1999) ........................................................................................10, 11

*Lincoln Chem. Corp. v. DuBois Chemicals, Inc.*,
2012 WL 6553098 (N.D. Ind. Dec. 13, 2012) ....................................................................14

*Meridian Mut. Ins. Co. v. Meridian Ins. Grp., Inc.*,
128 F.3d 1111 (7th Cir. 1997) .............................................................................................8

*Nano-Proprietary, Inc. v. Keesmann*,
2007 WL 433100 (N.D. Ill. Jan. 30, 2007) .......................................................................18

*Neuros Co. v. KTurbo, Inc.*,
698 F.3d 514 (7th Cir. 2012) ...............................................................................................9

*Planetary Motion, Inc. v. Techsplosion, Inc.*,
261 F.3d 1188 (11th Cir. 2001) ..........................................................................................10

*Planned Parenthood Fed'n of Am., Inc. v. Bucci*,
1997 WL 133313 (S.D.N.Y. Mar. 24, 1997) ......................................................................10

*Promatek Indus., Inc. v. Equitrac Corp.*,
300 F.3d 808 (7th Cir. 2002) ...................................................................................14, 16, 18

*Ram Prod. Co. v. Chauncey*,
967 F. Supp. 1071 (N.D. Ind. 1997) ...................................................................................14

*Smith v. Ne. Ill. Univ.*,
388 F.3d 559 (7th Cir. 2004) ...............................................................................................11

*Toyota Indus. Equip. Mfg., Inc. v. Land*,
2014 WL 3670133 (S.D. Ind. July 21, 2014).......................................................................19

*Ty, Inc. v. Jones Group, Inc.*,
237 F.3d 891 (7th Cir. 2001) .................................................................... 14, 16-17, 19, 20

*United States v. Hanjuan Jin*,
733 F.3d 718 (7th Cir. 2013) ...............................................................................................16

*Valencia v. City of Springfield*,
  883 F.3d 959 (7th Cir. 2018) ........................................................................................2

*VitalGo, Inc. v. Kreg Therapeutics, Inc.*,
  370 F. Supp. 3d 873 (N.D. Ill. 2019) ............................................................................3

*Web Printing Controls Co., Inc. v. Oxy-Dry Corp.*,
  906 F.2d 1202 (7th Cir. 1990) .......................................................................................3

*Whitaker By Whitaker v. Kenosha Unified Sch. Dist. No. 1*,
  858 F.3d 1034 (7th Cir. 2017) .................................................................................14, 15

## STATUTES

15 U.S.C. § 1127 ................................................................................................................11

18 U.S.C. § 1836(b)(1) ......................................................................................................11

18 U.S.C. § 1839(5) ...........................................................................................................11

Ind. Code § 24-2-3-2 ..........................................................................................................11

## OTHER AUTHORITIES

Fed. R. Civ. P. 65(d) ..........................................................................................................21

Fed. R. Evid. 408 ...............................................................................................................18

HNI Assignments, iconectiv IMSI,
  https://imsiadmin.com/assignments (last visited April 9, 2020).........................4, 10

## INTRODUCTION

Plaintiff LigTel Communications, Inc. seeks a preliminary injunction to stop Defendants Baicells Technologies, Inc. and Baicells Technologies North America, Inc. (together, "Baicells") from continuing to irreparably harm LigTel's standing, reputation, and goodwill among wireless service providers, consumers, and the public at large.

Baicells is causing that irreparable harm in three distinct ways, as LigTel explained in its opening brief.  *See* Dkt. 36 ("LigTel Brief").  First, by using a five-digit Home Network Identity ("HNI") code 31198 that appears to the world to be LigTel's six-digit code 311980, Baicells is improperly passing off its signal as LigTel's.  Second, by using 31198 in communications to customers and potential customers, Baicells is falsely and misleadingly representing that its code is valid and that using it complies with applicable rules.  Third, by suggesting it could access LigTel's network without authorization and highlighting Baicells's links to the company that built LigTel's network (among many other things), Baicells appears to have misappropriated LigTel's valuable and confidential trade secrets.

Baicells does not dispute the key facts underlying LigTel's claims.  Relevant to the Lanham Act claims, Baicells concedes that it self-selected 31198 as a five-digit HNI code despite recognizing that all HNI codes in the United States are six digits, that LigTel is assigned 311980, and that LigTel has not authorized Baicells to use its code.  Baicells offers no explanation for why it chose, out of millions of options, a number that appears to the world to be identical to LigTel's, imprinted tens of thousands of pieces of customer equipment with 311980, or used 31198 in communications with customers as though it were a valid, authorized code.  And Baicells admits that it continued to use 31198 even after it knew that doing so caused confusion among its customers and irreparably harmed LigTel.  Indeed, Baicells still promoted 31198 on its website until this Court intervened.  Relevant to the trade secrets claim, Baicells further acknowledges that

it was founded by two individuals who left the company that built LigTel's network and then hired a key engineer from that company after he touted his work with LigTel.

Tellingly, Baicells offers no logical or rational explanation for any of these actions. Instead, Baicells offers a handful of technical arguments for why its knowing misdeeds are supposedly not cognizable under federal and state law. Those arguments are wrong. Insofar as they apply at all, they are based on an erroneous reading of the law and are contrary to Seventh Circuit precedent. Baicells's legal arguments thus do not undermine LigTel's showing that there is a likelihood that it will succeed on the merits of its claims.

This Court should therefore issue a preliminary injunction. Without one, LigTel has no adequate legal remedy for the irreparable harm that Baicells has caused, and will continue to cause. Issuing an injunction will provide LigTel with critical preliminary relief without causing undue harm to Baicells—Baicells itself is responsible for any burden that it claims it would experience, and Baicells identifies no reason why it cannot immediately cease using 31198 or 311980 in a way that makes its signal appear to be LigTel's. And an injunction will also advance the public interest by ensuring that knowing misconduct does not continue unabated. The Court should immediately enjoin Baicells's improper activity.

## ARGUMENT

As LigTel explained in its opening brief, LigTel is entitled to a preliminary injunction because it (1) clears the "low threshold" to show it is likely to succeed on the merits, (2) will suffer irreparable harm absent an injunction, and (3) has no adequate remedy at law. *See* LigTel Brief at 12 (citing *Valencia v. City of Springfield*, 883 F.3d 959, 965-66 (7th Cir. 2018)). LigTel also has shown that an injunction is warranted under the Seventh Circuit's sliding-scale approach because the balance of harms favors LigTel and LigTel has shown that its "chances to succeed on [its]

claims are 'better than negligible.'" *Id.* Baicells does not dispute the legal standard. *See* Dkt. 35 ("Baicells Brief") at 5-6.

## I.      LigTel Is Likely To Succeed On The Merits

In its opening brief, LigTel showed that it is likely to succeed on the merits of its claims based on the evidence and well-established caselaw. *See* LigTel Brief at 14-24. For its part, Baicells offers only unsupported assertions that contradict the evidence and legal arguments that are misplaced and mistaken. These arguments are without merit.

### A.      Baicells's Use Of 31198 Violates The Federal Lanham Act And Indiana Unfair Competition Law

As LigTel explained, Baicells is violating the Lanham Act in two distinct ways. *See* LigTel Brief at 15-21. First, Baicells is violating the Lanham Act's "false designation of origin" provision because Baicells's use of 31198 makes the signal from Baicells's equipment wrongly appear to be from LigTel, which is likely to cause confusion (and already has). *See VitalGo, Inc. v. Kreg Therapeutics, Inc.*, 370 F. Supp. 3d 873, 889 (N.D. Ill. 2019) (citing *Web Printing Controls Co., Inc. v. Oxy-Dry Corp.*, 906 F.2d 1202, 1204 (7th Cir. 1990)) (describing elements of a "passing off" or "palming off" claim); *Heartland Recreational Vehicles, LLC v. Forest River, Inc.*, 2009 WL 418079, at *4 (N.D. Ind. Feb. 18, 2009). Second, Baicells is violating the Lanham Act's bar on misrepresentations by falsely and misleadingly implying in communications to customers and potential customers that 31198 is a valid HNI code that Baicells is authorized to use. *See B. Sanfield, Inc. v. Finlay Fine Jewelry Corp.*, 168 F.3d 967, 971 (7th Cir. 1999) (describing elements of misrepresentation claim). Glossing over distinctions between the two, Baicells offers three reasons that purport to excuse its actions. None withstands scrutiny.

### 1.    LigTel has shown a likelihood that Baicells's use of 31198 actually is the same as LigTel's HNI code

Baicells first argues that it has not "palmed off" LigTel's signal or misrepresented its authority to use 31198 because that number is "separate and distinct" from LigTel's code, 311980. Baicells Brief at 8.  To support this statement, Baicells simply cites its own interrogatory response and a declaration from a Baicells official stating, "31198 is not LigTel's HNI/PLMN Code." Baicells Brief at 7 (citing DeGroote Decl. Ex. B; Dkt. 35-5 ("Raasch Decl.") ¶ 11).  The evidence contradicts Baicells's unsupported assertions in three critical respects.

*First*, the evidence shows that the authorities responsible for assigning and regulating HNI codes say that 31198 and 311980 are the same.  Specifically, the IMSI Oversight Council (IOC), a committee of the Alliance for Telecommunications Industry Solutions (ATIS) that governs the assignment and administration of HNI codes, has said that 31198 "has been assigned in the US to another party (Ligtel)."  Gillett Ex. 11 at 8431.  Additionally, the U.S. IMSI administrator that manages HNI codes, iconectiv, has told Baicells that it "is currently using an HNI that is assigned to another company" and that Baicells should migrate its equipment and underlying customers to its own HNI code.  Gillett Ex. 10 at 8180.  ATIS and the IOC also make clear that there is no such thing as a five-digit HNI code in the United States—an HNI code is "a fixed 6-digit length in the United States."  Wentworth Ex. 1 (IMSI Guidelines) § 3.9; *see also* HNI Assignments, iconectiv IMSI, https://imsiadmin.com/assignments (last visited April 9, 2020) (listing more than 400 six-digit HNI codes and no five-digit HNI codes).  Those statements from the authoritative bodies are more than enough to establish a likelihood of success.[1]

---

[1] To attempt to advance its argument that 31198 and 311980 are different, Baicells notes that "LigTel has never registered or used the five-digit HNI Code 31198."  Baicells Brief at 7.  Of course, companies like LigTel that comply with the ATIS rules do not "register" the codes they use—they apply for a code, then ATIS assigns one—and do not use any five-digit codes, because all valid HNI codes in the United States are and always have been six digits.

*Second*, the evidence shows that Baicells itself has recognized that 31198 is the same as 311980.  In internal communications, Baicells described 31198 as the "same as LigTel's PLMN '311980,'" Gillett Ex. 8 at 8106, and acknowledged that it does "not belong to Baicells."  Gillett Ex. 22 at 7954.  Although Baicells now asserts without authority that an HNI code is "either five or six digits" (Baicells Brief at 2 (citing Raasch Decl. ¶ 10)), Baicells previously admitted— consistent with the statements from ATIS and IOC just discussed—that "the full list of assigned PLMN numbers in the United States contained no five-digit numbers."  Gillett Ex. 18 at Resp. 1. Moreover, discovery has revealed that Baicells has issued more than 60,000 SIM cards that begin with 311980 (Gillett Ex. 9 at 7869; Dkt. 36-36 ("Wentworth Decl.") ¶ 21; Wentworth Ex. 11), and there is no evidence that Baicells has ever used any digit but zero after its self-assigned HNI code. In other words, in practice Baicells itself treats 31198 as 311980.

*Third*, the evidence shows that Baicells's own customers and its customers' competitors view 31198 as 311980.  LigTel learned that Baicells was using an HNI code that appeared to be LigTel's because Viaero Wireless experienced interference from a signal from Nebraska identified with the code 31198 and believed it was coming from LigTel.  Wentworth Decl. ¶¶ 20-21; Wentworth Exs. 9, 10.  After learning that the signal was not coming from LigTel (which does not operate in Nebraska), Viaero told LigTel that "Sandhills Wireless [is] using your [HNI code]," and "Baicells should not be telling clients to use your information."  Wentworth Ex. 10 at 1519.  LigTel then learned that both Sandhills and another Baicells customer, New Lisbon, believed 31198 to be 311980, and expressed surprise that their equipment was programmed with a code that was assigned to LigTel.  Wentworth Decl. ¶ 26; Dkt. 36-23 ("Mead Decl.") ¶ 12.  In other words, the

5

companies that have actually purchased Baicells's equipment and services, and others that could, understand 31198 to be LigTel's HNI code.[2]

This evidence not only contradicts Baicells's bare assertion that 31198 and 311980 are materially different, but also satisfies the falsity elements of LigTel's Lanham Act claims. For purposes of LigTel's "false designation of origin" claim, the evidence shows that Baicells's use of 31198 makes it appear that the signal coming from Baicells's equipment is actually coming from LigTel. For purposes of LigTel's misrepresentation claim, that same evidence shows that Baicells's use of 31198 in communications with customers and potential customers is false and misleading for two reasons: (1) it implies that 31198 is a valid HNI code when no five-digit code is valid in the United States, and (2) it implies that Baicells is authorized to use 31198 when the entities that administer HNI codes, Baicells itself, and Baicells's customers see and understand 31198 to be LigTel's HNI code.

### 2. LigTel has shown a likelihood that Baicells's use of 31198 causes confusion that is actionable under the Lanham Act

Baicells next contends that LigTel cannot prevail on its passing off or misrepresentation claims because Baicells's use of 31198 supposedly has not caused and is not likely to cause "confusion among consumers." Baicells's argument is wrong both as a matter of fact—by disregarding undisputed evidence that Baicells's actions have already caused confusion—and as a matter of law, by misconstruing key aspects of the Lanham Act.

---

[2] Though not cited in its brief, Baicells presents evidence that 31198 and 311980 appear differently in the hexadecimal coding used in each device's SIM card. *Compare* Raasch Decl. ¶¶ 18-19, *with* Wentworth Resp. Decl. ¶ 5. This is beside the point. Any difference in technical SIM card coding is irrelevant in assessing what other market participants, including Baicells's customers and potential customers, see as the source of the signal coming from Baicells's equipment. The evidence shows that when those participants see the signal coming from Baicells's equipment and identified with 31198, they believe it is coming from LigTel based LigTel's HNI code 311980. Wentworth Ex. 10 at 1520; *cf.* Raasch Decl. ¶¶ 18-19 (describing how SIM cards read the coding).

To determine whether there is a likelihood that Baicells's use of 31198 will cause confusion that is cognizable under either of LigTel's claims, the court considers seven factors: "(1) the similarity between the marks in appearance and suggestion, (2) the similarity of the products, (3) the area and manner of concurrent use of the products, (4) the degree of care likely to be exercised by consumers, (5) the strength of the complainant's mark, (6) any evidence of actual confusion, and (7) the defendant's intent (or lack thereof) to palm off its product as that of another." *Eli Lilly & Co. v. Nat. Answers, Inc.*, 233 F.3d 456, 461-62 (7th Cir. 2000). Although the "proper weight given to each [factor] will vary from case to case … the similarity of the marks, the intent of the defendant, and evidence of actual confusion are the most important." *Id.* (internal quotation marks and citations omitted).

As explained in LigTel's opening brief, the key factors all favor LigTel. The evidence shows that 31198 and 311980 appear to the world to be identical; that Baicells intentionally used 31198 despite knowing it was invalid and spoofed LigTel's HNI code; and that Baicells's use of 31198 has caused actual confusion. *See* LigTel Brief at 16-19. The other relevant "likelihood of confusion" factors favor LigTel as well, because Baicells is broadcasting its signal concurrently with LigTel, LigTel's mark is strong, and even sophisticated service providers and law enforcement officials are likely to be confused by Baicells's use of 31198. *Id.* at 18-19.

Baicells does not acknowledge these factors much less attempt to explain how they apply. Instead, Baicells argues repeatedly that LigTel has not identified "*consumer* confusion." Baicells Brief at 8-10. But Baicells has its facts wrong. LigTel has offered evidence that Baicells's use of 31198 has caused confusion among actual and potential consumers of the goods and services that Baicells offers in interstate commerce. Specifically, LigTel has demonstrated that Viaero Wireless believed that a signal coming from Baicells's equipment was actually LigTel's, and that Sandhills

and New Lisbon wrongly believed that Baicells was authorized to use 31198.  *See* Wentworth

Decl. ¶¶ 20-21, 24-26; Wentworth Exs. 9, 10.  Indeed, Baicells has acknowledged to iconectiv that

its use of HNI code 31198 causes "confusion" and agreed to obtain its own HNI code to "avoid

confusion."   Gillett Ex. 10 at 8179; *see also* Gillett Ex. 7 at 8419; Mao Decl. Ex. 2 at 35338

("Baicells recognizes that the PLMN ID conflict is causing confusion.").  The evidence therefore

shows that consumers have been confused and are likely to continue to be confused by Baicells's

actions.

Baicells is wrong on the law as well.  Baicells repeatedly treats the term "consumer" as

though it means "end-user consumer" exclusively.  *See* Baicells Brief at 9-10.  Yet Baicells offers

no legal or logical authority for that proposition.  That is because the Lanham Act is not limited to

retail transactions.  *See, e.g.*, *Computer Care v. Service System Enters., Inc.*, 982 F.2d 1063, 1071

(7th Cir. 1992) (recognizing the relevant "customers" were the car dealerships that purchased

plaintiff's letters reminding car owners to get service, not the car owners who would eventually

receive the letters).  Nor does Baicells explain why the customers at issue here—the wireless

carriers such as Viaero, Sandhills, and New Lisbon—or others similarly situated are not

"consumers" for purposes of the Lanham Act when they are in the market for wireless network

equipment and services.  *See* Baicells Brief at 2 ("Baicells provides wireless network equipment

to network operators" (citing Raasch Decl. ¶ 8)).  To those consumers of wireless network

equipment, HNI codes "serve as source-identifying marks," have "visibility" and "significance,"

and are used to "associate or identify" the source of goods and services—the codes are used to

distinguish between carriers and their respective signals.  *See* Baicells Brief at 9.  So even under

Baicells's crabbed legal framework, the confusion LigTel has identified is cognizable under the

Lanham Act.  *See Meridian Mut. Ins. Co. v. Meridian Ins. Grp., Inc.*, 128 F.3d 1111, 1118 (7th

Cir. 1997) ("The importance of the actual confusion element rests in the fact that confusion leads to an injury").

Baicells's other arguments are irrelevant to the confusion analysis. Baicells notes that it does not compete with LigTel. Baicells Brief at 2; Raasch Decl. ¶¶ 5-8. But it makes no difference that Baicells and LigTel have different customers: "A likelihood of confusion may exist even if the parties are not in direct competition, or their products and services are not identical." *CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 679 (7th Cir. 2001); *see Enigma Software Grp. USA, LLC v. Bleeping Computer LLC*, 194 F. Supp. 3d 263, 297 (S.D.N.Y. 2016) (finding a Lanham Act misrepresentation claim may succeed if plaintiff and defendant are not competitors). The central question is whether consumers will attribute the two products to the same "source." *Bd. of Regents of Univ. of Wisc. Sys. v. Phoenix Int'l Software, Inc.*, 653 F.3d 448, 455 (7th Cir. 2011). Here, the evidence shows they do. *See, e.g.*, Wentworth Decl. ¶¶ 19-21; Wentworth Exs. 9, 10; Dkt. 35-3 ("Harnish Decl.") ¶¶ 7-9. The evidence here also shows that Baicells uses 31198 in communications on its website and in other customer-facing materials (*see* Dkt. 34, Feb. 18, 2020 Hr'g Tr. at 11-15; Gillett Ex. 20), and that Baicells's customers wrongly believed that 31198 was a valid and authorized HNI code (*see* Wentworth Decl. ¶¶ 24-26; Harnish Decl. ¶¶ 7-9).[3] Those are the key facts for purposes of LigTel's misrepresentation claim and they are undisputed.

---

[3] In contending that Baicells has not caused consumer confusion, Baicells briefly refers to what LigTel says to consumers. *See* Baicells Brief 10. What matters for purposes of a misrepresentation claim, however, is that *Baicells* misleadingly uses the HNI code in *its* statements to consumers, such as on its website. *See, e.g.*, *AECOM Energy & Constr., Inc. v. Ripley*, 348 F. Supp. 3d 1038, 1056 (C.D. Cal. 2018) (false statements about defendant's business on defendant's website satisfied this element); *Advanced Fluid Sys., Inc. v. Huber*, 28 F. Supp. 3d 306, 334 (M.D. Pa. 2014) (defendant's statements on website stated false advertising claim because website "invites the logical inference that defendants, not [plaintiff]" were the originator of the relevant software); *cf. Neuros Co. v. KTurbo, Inc.*, 698 F.3d 514, 521 (7th Cir. 2012) (advertising under the Lanham Act is not "limited to published or broadcast materials").

### 3.    LigTel's HNI code is a protectable mark under the Lanham Act

Finally, Baicells is wrong to assert that its improper use of an HNI code that appears to be LigTel's is not actionable because "LigTel's HNI code is not a protectable mark."  *See* Baicells Brief at 10.  To qualify as protectable, LigTel's mark must be used "in commerce" and identify LigTel to some segment of the public as the adopter of the mark.  *See Johnny Blastoff, Inc. v. Los Angeles Rams Football Co.,* 188 F.3d 427, 433-34 (7th Cir. 1999).  LigTel satisfies both those elements with respect to its HNI code.

*First*, LigTel uses its HNI code "in commerce."  Use in commerce is analyzed "on a case by case basis, considering the totality of circumstances" surrounding the mark's alleged use in connection with a product.  *Id.* at 433; *Chere Amie v. Windstar Apparel Corp.*, 2002 WL 460065, at *4 (S.D.N.Y. Mar. 26, 2002).  The "use in commerce" requirement is satisfied so long as LigTel uses its HNI code as part of its lawful business—even if the mark is not used in sales.  *See Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1194-95 (11th Cir. 2001) ("Because Congress's authority under the Commerce Clause extends to activity that 'substantially affects' interstate commerce, the Lanham Act's definition of commerce is concomitantly broad in scope: 'all commerce which may lawfully be regulated by Congress.'" (citations omitted)); *Planned Parenthood Fed'n of Am., Inc. v. Bucci*, 1997 WL 133313, at *3 (S.D.N.Y. Mar. 24, 1997) (holding that an unregistered mark that appeared on the Internet "for access to all users, would satisfy the Lanham Act's 'in commerce' requirement"), *aff'd*, 152 F.3d 920 (2d Cir. 1998).  Here, LigTel indisputably uses its mark in connection with its business—LigTel acquired the code in compliance with applicable industry rules and LigTel's customers need the code for access to LigTel's network.  *See* Wentworth Decl. ¶ 2, 6, 12; Wentworth Exs. 2, 3; *see also* Gillett Ex. 2 (showing Baicells communicating with customers about HNI codes).

10

*Second*, LigTel is publicly identified with its HNI code. The iconectiv website lists LigTel as the entity that is assigned HNI code 311980. HNI Assignments, iconectiv IMSI, https://imsiadmin.com/assignments (last visited April 9, 2020); Gillett Ex. 10 at 8180 (ATIS explaining that the code Baicells uses "is assigned" to LigTel). And as both the Viaero/Sandhills incidents and communications with carriers show, LigTel is identified in the marketplace by its HNI code. *See* Mead Resp. Decl. ¶ 3a-b; Wentworth Resp. Decl. ¶ 4a-b; Harnish Decl. ¶¶ 7-9. That fully satisfies the Lanham Act's requirements. *See Johnny Blastoff,* 188 F.3d at 433-34 (requiring the mark be distinguishable "in an appropriate segment of the public mind as those of the adopter of the mark." (alteration omitted)); *accord* 15 U.S.C. § 1127 (defining "trademark" and "service mark" as something "to identify and distinguish" an entity's goods or services from those of "others and to indicate the source" of the goods or services "even if that source is unknown").

### B.   Baicells Has Misappropriated LigTel's Trade Secrets In Violation Of Federal And State Law

Federal and Indiana law prohibit the misappropriation of the valuable and confidential trade secrets that LigTel has taken reasonable measures to protect. 18 U.S.C. § 1836(b)(1); *id.* § 1839(5); Ind. Code § 24-2-3-2. Baicells does not dispute that the trade secrets at issue here— LigTel's encryption code, network architecture, and network engineering—are confidential, proprietary, and valuable pieces of information that are entitled to protection.[4] Nor does Baicells dispute that LigTel has taken reasonable measures to protect those secrets. *Cf.* Mead Decl. ¶ 7 (describing efforts to secure trade secrets); Mead Exs. 6-8, 11.

---

[4] Baicells asserts, without any development or elaboration, that LigTel "fails to adequately identify or define" its trade secrets. Br. 14. Baicells has thus forfeited that argument. *See Smith v. Ne. Ill. Univ.*, 388 F.3d 559, 569 (7th Cir. 2004). In any event, LigTel has identified the secrets at issue in ample detail. *See* Wentworth Response Decl. ¶¶ 9,10; Wentworth Ex. 10. The content of those secrets has been redacted from public filings, to ensure they remain protected, but LigTel can provide unredacted versions should the Court wish to review them.

Baicells's only defense is its claim that LigTel is wrong to contend that Baicells possesses LigTel's trade secrets. *See* Baicells Brief at 14-15. The undisputed evidence supports LigTel, however. LigTel shared its trade secrets with Huawei (subject to a non-disclosure agreement) as part of its deployment of the first LTE network in the United States. Wentworth Decl. ¶ 16. Shortly thereafter, two Huawei employees founded Baicells and began selling LTE equipment and services in the United States. Wentworth Decl. ¶ 22. Rather than applying for its own valid six-digit HNI code for use in that equipment, Baicells instead chose to self-adopt a five-digit code. Baicells Brief at 2. After examining the full list of assigned six-digit codes, Baicells selected 31198 out of the millions of available options, even though LigTel had been assigned 311980. *Id.*; Raasch Decl. ¶ 12. Later, Baicells hired Ronald Mao as its technical advisor after he touted his work at Huawei on the deployment of LigTel's LTE core that utilized 311980. Gillett Ex. 1 at 13481-82 (translated). And after LigTel demanded that Baicells stop using 31198, Mao helped craft LigTel's strategy to respond, and Bo Wei (a top Baicells official) offered to have Mao "get into" LigTel's core. Mead Decl. ¶ 22; Mead Resp. Decl. ¶¶ 7-10; Wentworth Decl. ¶ 30; Mao Decl. Ex. 2.

The fair inference from this mountain of evidence is that Baicells acquired LigTel's trade secrets without authorization. In response, Baicells raises a number of disputes about the sworn statements offered by LigTel's representatives. For example, Baicells offers a declaration from Wei disagreeing with LigTel's account of the meeting where he said Mao could "get into" LigTel's core. Baicells Brief at 14-15 (citing Dkt. 35-6 ("Wei Decl.") ¶ 18). But Wei admits that he called the private sidebar meeting without explaining why, or how LigTel's CEO and others would have misconstrued the events that took place. *Compare* Wei Decl. ¶ 16, *with* Mead Resp. Decl. ¶¶ 7-8 *and* Wentworth Resp. Decl. ¶¶ 18-19.

Baicells also offers a declaration from Mao, but it is squarely contradicted by the evidentiary record and deserves no weight. Mao claims he never had access to LigTel's "encryption code, IP infrastructure (either physical or logical), software, or systems." Dkt. 35-4 ("Mao Decl.") ¶ 17; *see also id.* ¶ 23. Yet the documents show Wentworth emailed Mao information about LigTel's trade secrets. *See* Wentworth Resp. Decl. ¶¶ 9, 10; Wentworth Ex. 8. Indeed, Baicells has admitted that Mao's knowledge of those secrets was based on what "LigTel shared with him" (Gillett Ex. 18 at Resp. 15)—*i.e.* the trade secrets that Wentworth emailed to him. In addition, the record contradicts Mao's claim that he did not take any "work-related documents" or other information about LigTel when he left Huawei. Mao Decl. ¶ 20. In discussing the "strategy" for dealing with LigTel, Mao emailed other Baicells employees with information about LigTel that Mao had "recovered" from "digging" into his "old notes." Mao Decl. Ex. 2 at 7858. Mao now claims that what he "referred to as 'my old notes'" was actually his "memory." Mao Decl. ¶ 21. The technical detail that Mao unearthed from "digging" through his supposed "memory" strongly suggests otherwise.[5]

At best, Baicells has raised issues for a trier of fact to conclusively decide on the merits after assessing each witness's credibility. *See EEOC v. Sanchez*, 2010 WL 11452034, at *6 (E.D. Wash. Nov. 30, 2010) (granting preliminary injunction while noting "[t]he court is not making any final credibility determinations at this time. Credibility will be revisited and determined in conjunction with the adjudication of the merits"). At this preliminary stage, the Court should credit the statements from LigTel's witnesses—which are supported by the contemporaneous documents

---

[5] Much of the rest of Mao's declaration is smokescreen that says nothing to show Baicells has not misappropriated LigTel's trade secrets. For example, Mao says he was in what "he considered to be a 'maintenance mode'" job and that he was not involved in the initial installation of LigTel's equipment, never visited LigTel's facilities, and never sold equipment to LigTel. Baicells Brief at 15 (citing Mao Decl. ¶¶ 12-16). Yet Mao does not explain why the role he "considered" himself to be in, his physical presence at LigTel facilities, or his involvement in sales to LigTel would matter for the purposes of LigTel's claims.

and the strong circumstantial evidence noted above. The Court should issue a preliminary injunction to stop misappropriation of LigTel's trade secrets.

## II.   Absent A Preliminary Injunction, LigTel Will Continue To Suffer Irreparable Harm For Which It Has No Adequate Legal Remedy

In the Seventh Circuit, harm arising from Lanham Act violations and misappropriation of trade secrets is presumed to be irreparable. *Promatek Indus., Inc. v. Equitrac Corp.*, 300 F.3d 808, 813 (7th Cir. 2002); *HCAFranchise Corp. v. Alisch*, 2016 WL 10706285, at *5 (N.D. Ind. Aug. 12, 2016). "This presumption," the court has explained, "is based upon the judgment that it is virtually impossible to ascertain the precise economic consequences of intangible harms, such as damage to reputation and loss of goodwill, caused by such violations." *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 16 (7th Cir. 1992); *see Ty, Inc. v. Jones Group, Inc.*, 237 F.3d 891, 902 (7th Cir. 2001).[6]

Against this caselaw, Baicells offers four reasons why its Lanham Act violations and misappropriation of LigTel's trade secrets supposedly are not causing irreparable harm and should not be enjoined. None of those reasons have merit.

*First*, Baicells asserts that LigTel has not identified any "actual harm" from the confusion that has already occurred. Baicells Brief at 16. But LigTel need not do so— the irreparable harm requirement does not mandate "that the harm actually occur before injunctive relief is warranted," or "that the harm be certain to occur before a court may grant relief on the merits." *Whitaker By Whitaker v. Kenosha Unified Sch. Dist. No. 1*, 858 F.3d 1034, 1044-45 (7th Cir. 2017); *see also*

---

[6] *See also, e.g.*, *Integrity Trade Servs., Inc. v. Integrity Employment Partners, LLC*, 2015 WL 10934322, at *1-2 (N.D. Ind. May 20, 2015) (explaining that defendants' violations of the Lanham Act and trade secrets misappropriation "harm [plaintiff's] reputation and goodwill"); *Lincoln Chem. Corp. v. DuBois Chemicals, Inc.*, 2012 WL 6553098, at *7 (N.D. Ind. Dec. 13, 2012) (explaining that damages could not "be reasonably calculated for any misuse of trade secrets"); *Ram Prod. Co. v. Chauncey*, 967 F. Supp. 1071, 1085 (N.D. Ind. 1997) (in trade secrets case, observing that "loss of customer goodwill often amounts to irreparable injury because the damages flowing from such losses are difficult to compute").

14

Baicells Brief at 16 (quoting *Whitaker* and acknowledging that a preliminary injunction may be appropriate if LigTel can show it "will *likely* suffer irreparable harm" (emphasis added)).

In any event, the evidence shows that LigTel is being irreparably harmed by the confusion that Baicells has caused and is causing. Baicells admits that its use of an HNI code that appears to be LigTel's has caused confusion. *See* Baicells Brief at 16. That instance, in which a service provider wrongly believed LigTel was causing harmful interference because Baicells's equipment was broadcasting a signal that appeared as though it was coming from LigTel, harmed LigTel's reputation and caused it to lose goodwill in the marketplace.[7] Wentworth Resp. Decl. ¶ 4a.

Baicells's actions risk other harm to LigTel as well. For example, by making it appear as though LigTel is causing interference, Baicells causes others to believe LigTel does not comply with international and industry-imposed rules and creates an impression that LigTel cannot properly manage its network. Wentworth Decl. ¶¶ 38, 41. That tarnishes LigTel's reputation in the industry, leading other providers to treat LigTel less favorably, which may ultimately frustrate LigTel's ability to serve its customers. Wentworth Decl. ¶¶ 41-42. LigTel's reputation is also at risk so long as end users of Baicells's customers use a code that the rest of the world understands as LigTel's code, because doing so prevents LigTel from complying with IMSI guidelines that require LigTel to maintain accurate records of end users using its HNI code. *See* IMSI Guidelines §§ 7.3.1, 7.3.2. Baicells's use of an HNI code that appears to be LigTel's, and Baicells's misappropriation of LigTel's trade secrets also threatens LigTel's reputation with customers, who could interpret Baicells's actions as showing that LigTel cannot control its network or protect its

---

[7] Baicells witnesses mischaracterize this network interference problem and claim Baicells's use of 31198 "cannot cause interference with LigTel's network or equipment, because SIM cards do not broadcast the PLMN." Raasch ¶ 34; *see also* Wei Decl. ¶ 10. LigTel has never claimed that Baicells has caused interference with *LigTel's* network. Instead, Baicells's equipment has caused interference with other networks (such as Viaero's), whose operators then accused LigTel of causing the interference based on the associated HNI code. Wentworth Resp. Decl. ¶¶ 6-7. .

customers' personal information and confidential communications.  Wentworth Decl. ¶¶ 41-42; *see United States v. Hanjuan Jin*, 733 F.3d 718, 722 (7th Cir. 2013) (noting theft of trade secrets can injury a company "by revealing that it couldn't keep secrets or prevent rivals from stealing its technology").  Finally, Baicells's use of an HNI code that appears to be LigTel's may cause law enforcement to seek information from LigTel about individuals who appear to be LigTel subscribers, when in fact they are not.  *See* Wentworth Decl. ¶ 36; Mead Decl. ¶¶ 26, 32.  That harms LigTel's reputation with law enforcement and creates serious public safety risks.  *See* Mead Decl. ¶¶ 21, 32.  These actual harms to goodwill and reputation that LigTel is suffering are presumptively irreparable under Seventh Circuit law.  *See, e.g.*, *Promatek Indus.*, 300 F.3d at 813.

*Second*, Baicells contends that LigTel cannot show irreparable harm because it filed this action seven months after learning of Baicells's misconduct.  Baicells Brief at 17, 19.  But LigTel did not sit on its hands for seven months as Baicells suggests.  To the contrary, LigTel repeatedly took steps to assert its rights and put Baicells on notice that it was causing LigTel irreparable harm.  Within a month of discovering that Baicells was using an HNI code that appeared to be LigTel's, LigTel conducted an investigation, gathered information from Baicells's customers, and contacted Baicells to try to work out a resolution directly.  Mead Resp. Decl. ¶ 3a-c.  When Baicells refused, LigTel spent five months attempting to reach a resolution through ATIS.  Mead Resp. Decl. ¶ 3d-g.  LigTel then sought judicial intervention when the ATIS process proved ineffective because Baicells refused to propose an acceptable, credible, or timely resolution.  *See* Mead Decl. ¶¶ 27, 30.  LigTel's so-called delay while it pursued relief out of court thus does not in any way diminish the irreparable harm LigTel is suffering.  Indeed, courts routinely find irreparable harm in circumstances like these, where the defendant has not "been 'lulled into a false sense of security or had acted in reliance on the plaintiff's delay.'"  *Ty, Inc.*, 237 F.3d at 902-03 (citation omitted)

(eight months elapsed before bringing suit); *BioConvergence LLC v. Attariwala*, 2019 WL 6893704, at *12 n.14 (S.D. Ind. Dec. 18, 2019) (citing *Ty, Inc.* and noting plaintiff acted to protect its rights during the seven months before bringing suit).

*Third*, Baicells argues that an injunction is unnecessary because it claims to be in the process of migrating customers to a new HNI code.  Baicells Brief at 19-20.  Importantly, however, that so-called migration is not complete and will not be complete any time soon.  Despite having more than seven months to undertake migration, Baicells concedes that approximately 80% of its customers and more than 99% of its customers' underlying users continue to use the 31198 number that appears to be LigTel's.  *See* Gillett Ex. 18 at Resp. 11.  In addition, Baicells continued to list 31198 on its website until this Court intervened (*see* Dkt. 26), has repeatedly missed ATIS deadlines (*see* Gillett Ex. 21, at 62663-68), and has disregarded harm to LigTel arising from additional likely confusion of service providers and law enforcement (Mead Resp. Decl. ¶ 13; Wentworth Resp. Decl. ¶¶ 12-13).  That context not only belies Baicells's claim that migration will be completed in "less than three months" (Baicells Brief at 17), but also reinforces why an injunction is necessary regardless of the so-called migration that Baicells claims is underway.

The inadequacy of Baicells's migration plan is another reason that an injunction is necessary.  Baicells has not committed to change SIM cards for existing users, so their equipment will still have an HNI code of 311980—meaning legacy users will continue to appear to be LigTel subscribers.   Wentworth Decl. ¶ 36; Wentworth Resp. Decl. ¶¶ 13-14.   As a result, law enforcement may still wrongly identify a suspect or target as a LigTel customer and wrongly serve LigTel with legal process for a search, seizure, or surveillance related to that customer.  Wentworth Resp. Decl. ¶¶ 13-14; *see* Wentworth Decl. ¶ 11.  LigTel may also still be hit with roaming charges incurred by Baicells end users based on the use of an HNI code that appears to be LigTel's.

Wentworth Resp. Decl. ¶¶ 13-14; *see* Wentworth Decl. ¶ 37.  Even Baicells's witnesses seem to suggest that the current migration plan will only resolve "confusion related to spectrum interference."  Harnish Decl. ¶ 42; Raasch Decl. ¶ 32.  So Baicells's statements about its current plans are no reason to deny a preliminary injunction at this stage.

    *Fourth*, Baicells contends that money damages are an adequate remedy, and an injunction is categorically improper, because LigTel sought compensation when attempting to settle this dispute before going to court.  Baicells Brief at 17-18.  Even assuming the Court can consider this fact, *see* Fed. R. Evid. 408, that LigTel sought compensation as part of a good-faith effort to resolve this dispute by abandoning its own HNI code in no way shows that damages are an adequate remedy.  It is well-established that an injunction is appropriate when "the nature of the loss incurred by the plaintiff makes it difficult to calculate damages."  *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S. of Am., Inc.*, 549 F.3d 1079, 1095 (7th Cir. 2008).  That includes situations where the loss is based on harm to a company's goodwill and reputation, *id.*, or when the damage arises from violations of the Lanham Act and misappropriation of trade secrets, *see, e.g.*, *Promatek Indus.*, 300 F.3d at 813; *Abbott Labs.*, 971 F.2d at 16; *HCA Franchise Corp.*, 2016 WL 10706285, at *5.  An injunction remains appropriate even if a party may be entitled to damages or attempts to put a "price tag" on their claims at some point, especially when the amount "is speculative, leaving equity as a more just remedy than money damages."  *Nano-Proprietary, Inc. v. Keesmann*, 2007 WL 433100, at *6-7 (N.D. Ill. Jan. 30, 2007); *see Girl Scouts of Manitou Council*, 549 F.3d at 1095 ("A damages remedy need be 'seriously deficient,' but not 'wholly ineffectual.'" (citation omitted)).  That is the situation here, where "only an equitable remedy would provide … effective relief" by stopping Baicells from continuing to cause LigTel irreparable harm.  *Girl Scouts of Manitou Council*, Inc., 549 F.3d at 1095.

### III.    The Balance of Equities And Public Interest Favor A Preliminary Injunction

LigTel has demonstrated that it is suffering and will continue to suffer irreparable harm to its business reputation and goodwill without a preliminary injunction.  LigTel has also shown that allowing Baicells to continue using an HNI code that appears to be LigTel's will perpetuate confusion in the marketplace and may create risks to public safety.  LigTel can therefore show the balance of equities favors an injunction and that an injunction is in the public interest.  Baicells's arguments to the contrary are unavailing.[8]

Baicells argues that it would suffer irreparable harm if it were "forced to immediately stop using HNI code 31198" before it completes its migration plan.  Baicells Brief at 20-21.  Any such harm that Baicells would suffer is of its own making and thus irrelevant: the balancing analysis "excludes the burden [defendant] voluntarily assumed by proceeding in the face of a known risk" and, "[h]aving adopted its course," the defendant "cannot now complain that having to mend its ways will be too expensive."  *Ty, Inc.*, 237 F.3d at 903.[9]  And the undisputed evidence shows Baicells created its own harm here (if any) by knowingly and voluntarily self-selected 31198 as a five-digit HNI code despite recognizing that ATIS-authorized codes are six digits and that LigTel was assigned 311980.

More importantly, Baicells does not contend that it would suffer any irreparable harm if required to complete the migration immediately.  *See* Baicells Brief at 20.  Baicells acknowledges that it can remove HNI code 31198 from its customers' equipment through an eNodeB software

---

[8] Baicells also rehashes its contention that LigTel is not suffering irreparable harm because Baicells has not caused confusion and because LigTel attempted to resolve the matter out of court.  Baicells Brief at 16-17.  As discussed above, those arguments lack merit.

[9] *See also, e.g.*, *BioConvergence LLC*, 2019 WL 6893704, at *14 ("any potential harm [defendant] may experience through entry of an injunction is reparable in that she possesses 'the keys to [her] release'" (citations omitted)); *Badger Daylighting Corp. v. Palmer*, 2019 WL 4572798, at *12 (S.D. Ind. Sept. 20, 2019) (same); *Toyota Indus. Equip. Mfg., Inc. v. Land*, 2014 WL 3670133, at *7 (S.D. Ind. July 21, 2014) (same).

upgrade that has already been written and pushed out to roughly 20% of its customers.  Raasch ¶¶ 29-30 ("Baicells has completed the upgrade of firmware software necessary to support its customers' transition to 314030"); Gillett Ex. 18 at Resp. 11-12 (listing migration progress); *see* Harnish Decl. ¶¶ 38-40 (acknowledging Baicells's migration plan involves software updates). Nothing but Baicells's own intransigence prevents it from pushing that software update to the rest of its customers immediately.  *See* Harnish Decl. ¶¶ 36-41 (explaining Baicells "has begun" to "encourage" customers to upgrade software by July); Raasch Decl. ¶ 30 (explaining Baicells is trying to "convince operators to upgrade all eNodeB software"); Wentworth Resp. Decl. ¶ 14 (noting updates occur remotely and do not require visits to customers or end users).  Similarly, Baicells has not identified any actual impediment to removing LigTel's HNI code from end users' SIM cards as soon as practicable, yet it refuses to commit to doing so.  *See* Wentworth Decl. ¶¶ 35-36; Gillett Ex. 5.  Especially given that Baicells has only itself to blame for the sluggish pace of its so-called migration plan, any resulting burden on Baicells from completing the migration immediately is the product of its own delay.  *See Ty, Inc.*, 237 F.3d at 903.  The balance of equities therefore favors LigTel, not Baicells.

The public interest similarly favors LigTel, as an injunction would prevent further confusion in the marketplace and avoid any public safety risk arising from Baicells's use of an HNI code that appears to be LigTel's.  Baicells's only response is that an injunction may be against the public interest in light of the ongoing COVID-19 crisis because end-users are particularly dependent on Internet services that Baicells facilitates.  Baicells Brief at 21.  Notably, Baicells does not (and could not) argue that the present situation somehow justifies its past improper actions or allowing it to continue irreparably harming LigTel going forward.  So the present situation is not a reason to decline to issue an injunction.  If anything, it is merely additional reason to craft

the injunction as appropriate under the circumstances. *See* Fed. R. Civ. P. 65(d) (describing specificity requirements).

## CONCLUSION

The undisputed evidence shows that a preliminary injunction is warranted here. LigTel is likely to prevail on the merits of its federal and state law claims for passing off, false and misleading representation, and misappropriation of trade secrets. Without enjoining those violations, Baicells's actions are causing, and will continue to cause, irreparable harm to LigTel's standing, reputation, and goodwill. Baicells's actions will also continue to endanger public safety. And the balance of equities and the public interest support enjoining Baicells's ongoing use of LigTel's HNI code and misappropriation of LigTel's trade secrets. This Court should therefore grant LigTel's motion for a preliminary injunction and require Baicells to stop using HNI code 31198 or 311980 immediately.

Dated:  April 9, 2020                                     Respectfully submitted,

                                                        */s/ Gabriel K. Gillett*

                                                        Samuel L. Feder (admitted *pro hac vice*)
                                                        Jenner & Block LLP
                                                        1099 New York Avenue, NW, Suite 900
                                                        Washington, DC 20001
                                                        (202) 639-6000

                                                        Michael J. Nelson
                                                        Gabriel K. Gillett (admitted *pro hac vice*)
                                                        Leigh J. Jahnig (admitted *pro hac vice*)
                                                        Jenner & Block LLP
                                                        353 N. Clark Street
                                                        Chicago, IL 60654
                                                        (312) 222-9350

                                                        Michael L Schultz
                                                        Parr Richey Frandsen Patterson Kruse LLP
                                                        251 N Illinois Street, Suite 1800
                                                        Indianapolis, IN 46204
                                                        (317) 269-2500

                                                        *Attorneys for Plaintiff*
                                                        *LigTel Communications, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on April 9, 2020, I caused the foregoing document, along with the accompanying declarations and exhibits, to be filed electronically with the Clerk of the Court using the CM/ECF system, which sent a notification to all counsel of record.


DATED: April 9, 2020

*/s/ Gabriel K. Gillett*