**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**

| | |
|---|---|
| LIGTEL COMMUNICATIONS, INC., <br><br>                Plaintiff, <br><br>       v. <br><br>BAICELLS TECHNOLOGIES INC.; <br>BAICELLS TECHNOLOGIES NORTH AMERICA INC., <br><br>                Defendants. | Case No. 1:20-cv-00037-HAB-SLC <br><br>**RESPONSE DECLARATION OF RANDY MEAD** |

I, Randy Mead, declare the following:

1. I am CEO and General Manager for LigTel Communications, Inc. I have read the declarations of Jessa DeGroote, Rick Harnish, Ronald Mao, Jesse Raasch, and Bo Wei filed in opposition to LigTel's motion for a preliminary injunction (docket entry numbers 35-1, 35-3, 35-4, 35-5, and 35-6).

## I.     Timeline of Baicells Dispute.

2. Baicells asserts that LigTel supposedly delayed in filing this suit. This is not true. LigTel did not delay. Since learning of the issue in late June 2019, LigTel has made numerous attempts to resolve the dispute without seeking court intervention. LigTel only sought court intervention after all of those attempts to resolve the dispute failed and it realized that Baicells was going to continue using its HNI code and misappropriating its trade secrets.

3. The following events are examples of LigTel's attempts to not delay and to resolve this dispute prior to the filing of this action.

    a. As explained in more detail in my original declaration ("Mead Decl."), in June 2019 I learned from Josh Wentworth, Network Operations Supervisor at LigTel, that Baicells was using what appeared to be LigTel's HNI code. A wireless provider in Colorado, Viaero Wireless, had contacted Wentworth on June 21, 2019 stating it appeared that signal coming from LigTel's network was causing interference issues in Colorado. An investigation ensued and, days later, on June 26, 2019, Wentworth told me that he found out that the interference was caused by Sandhills Wireless, a wireless provider in Nebraska, which was using an HNI code that appeared to be LigTel's HNI code—its IMSI began with the numbers "311980." This is LigTel's

1

authorized HNI code. I learned at this time that the equipment Sandhills was using was equipment from Baicells. Mead Decl. ¶ 12.

b. Just days later, in late June 2019, Wentworth informed me that another Indiana company, New Lisbon Broadband and Communications, was also using Baicells equipment. Shortly thereafter, on or around July 8, 2019, I spoke with John Greene at New Lisbon, who confirmed that New Lisbon was using an IMSI that started with "311980." I informed him that 311980 was LigTel's HNI code and that Baicells was not authorized to use LigTel's HNI code. New Lisbon also confirmed that Baicells had directed it to use "31198" and that it did not know Baicells lacked authorization to use that code. Mead Decl. ¶¶ 12-13.

c. We contacted Baicells directly about the issue on or around July 12, 2019 and promptly set up a meeting for the two companies on July 29, 2019 at our offices in Ligonier, Indiana. Mead Decl. ¶ 15.

d. The meeting was fruitless and nothing was resolved so we decided to seek relief through ATIS, which offers parties a way to voluntarily resolve disputes related to HNI codes without interfering with the parties' right to pursue relief elsewhere. Mead Decl. ¶ 27.

e. This process started on August 21, 2019, after our attorney sent ATIS a letter regarding Baicells's use of an HNI code that appears to the world to be LigTel's. ATIS agreed that Baicells should not be using this HNI code, as it was registered to LigTel. Mead Decl. ¶ 28.

f. From August through the present, LigTel and Baicells have been engaged with ATIS and the IOC regarding Baicells's plan to migrate to its assigned HNI code.

Mead Decl. ¶ 29.  However, this process has also proved fruitless: while Baicells states that it is migrating its consumers to its new HNI code, Baicells's plan is not adequate and Baicells is dragging its feet with the proposed migration.

g. Accordingly, after trying for months to get relief through ATIS, and because the threats to LigTel still exist – and will continue to exist until resolved – LigTel filed this suit.

## II. Baicells's Mischaracterizations of the July 29, 2019 Baicells LigTel Meeting

4. Important details are missing from Baicells's representatives characterizations of the July 29, 2019 meeting between LigTel and Baicells.

5. Harnish, Mao, and Wei each assert that LigTel's counsel participated in the meeting without prior notice.  Harnish Decl. ¶¶ 17-19; Mao Decl. ¶¶ 8-9; Wei Decl. ¶¶ 8-9.  We never concealed from Baicells the fact that our attorney would be joining the meeting.  Baicells was aware that our attorney was involved because Sandhills told Baicells that our attorney had sent Sandhills a cease and desist letter.

### i. *Wei's Inaccurate Statements*

6. During the meeting, Wei asserts that he claimed that there was no interference because Baicells's HNI code of 31198 is not the same as LigTel's HNI code of 311-980.  Wei Decl. ¶¶ 10-11.  Wei did claim this, but as explained above, and in my previous declaration, there had already been instances of confusion.  Wei also misstates LigTel's complaint.  Wei states that LigTel's claim is that "Baicells's use of the PLMN code 31198 interfered with LigTel's use of an HNI code of 311-980."  Wei Decl. ¶ 10.  But LigTel's complaint about interference is that other

3

networks will use the HNI code to identify LigTel as the *source* of interference. HNI codes themselves do not cause interference.

7. Wei also fails to account for the details of our private conversation. In fact, Wei denies that he stated to have Mao "get into" LigTel's Huawei-manufactured core and reprogram it. Wei Decl. ¶ 18. This is not true. At the meeting, after Wei asked to speak to me alone, and after Wei put forth a new offer to which I could not agree, Wei asked how LigTel had come up with its original offer price. I explained that it would include reprogramming our Huawei core and Wei responded with his statements about Mao. Specifically, he informed me that he knew that Huawei had manufactured and configured LigTel's core, asked if I knew that Mao had formerly worked at Huawei, and explained that he could have Mao "get into" our Huawei-manufactured core and reprogram it himself.

8. Wei made these statements to me privately, but repeated them in front of the group when we returned to the meeting.

9. In addition, immediately following the meeting, I conveyed the details of this private conversation to my team at LigTel. I asked Wentworth if we should be concerned. Wentworth confirmed that he had communications with Mao during LigTel's core upgrade and that Mao was given information about our network and how to access our core so that he could perform the work he was doing for Huawei. We understood Wei's words to mean that Mao's knowledge of our network and core could allow him to "get in" without our approval.

10. I still understand Wei's offer to mean that Baicells could have the ability to access LigTel's network and reprogram LigTel's core.

*ii. Mao's Inaccurate Statements*

11. Mao states that he did not have access to LigTel's "encryption code, IP infrastructure (either physical or logical), software, or systems." Mao Decl. ¶ 17. This is incorrect. I knew of Mao before the Baicells meeting on July 29, 2019. I know that Mao previously worked at Huawei and on technical projects related to LigTel's LTE core. In fact, I also know that Mao had been one of the Huawei employees who worked on maintaining and expanding LigTel's equipment after the initial installation.

### III.   Baicells's Migration Plan Is Not Adequate.

12. Harnish and Raasch describe Baicells's migration plan and Baicells's various updates in their respective declarations. Each fails to take into account serious flaws in the plan.

13. For instance, Harnish asserts that "once Baicells completes the migration of all network operators to broadcast the new HNI/PLMN Code of 314-030, there will be no risk of the sort of confusion related to spectrum interference between network operators that led" to the current dispute. Harnish ¶ 42. Raasch makes similar statements. Raasch Decl. ¶ 32. However, spectrum interference is not the only harm that LigTel is suffering as a result of Baicells's use of LigTel's HNI code. The other harms include: (1) that law enforcement would misidentify a Baicells end user as a LigTel customer, (2) that LigTel is unable to manage, in accordance with industry rules and standards, subscribers using its HNI code, (3) that LigTel will lose credibility in the industry because it does not comply with industry rules and standards, (4) that LigTel will not be able to negotiate favorable interoperability agreements with other providers, because of this lost credibility, and (5) that these harms will ultimately tarnish LigTel's reputation with its customers. Harnish and Raasch both ignore these harms.

14. Baicells's proposed migration plan involves broadcasting its new HNI code using its core network equipment, but existing end users will still use SIM cards that use 311980. Therefore this plan would not resolve the other harms that LigTel is suffering and may suffer.

15. Harnish states that Baicells intends to complete its migration by July 2020. Harnish Decl. ¶¶ 28, 36. Based on Baicells's past efforts to delay resolving our issues, I believe this date will not hold. Indeed, nothing is holding Baicells to this timetable. We do not have any confidence that Baicells will complete its migration by July.

16. Raasch also stated that he expects all operators will complete the "eNodeB software upgrade by July 2020." Raasch Decl. ¶ 31. Based on Baicells's past efforts to delay resolving our issues, I believe this date will not hold. Indeed, nothing is holding Baicells to this timetable. We do not have any confidence that Baicells will complete this upgrade by July.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 9, 2020

Randy Mead